No. 83-309

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

DENNIS P. WELSH,

        Plaintiff and Appellant,

  -vs-

THE CITY OF GREAT FALLS,
MONTANA, a municipal corp.
of the State of Montana,

        Defendant and Respondent.

---

APPEAL FROM:  District Court of the Eighth Judicial District,
              In and for the County of Cascade,
              The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Graybill, Ostrem, Warner & Crotty; Donald R. Ostrem,
        argued, Great Falls, Montana

    For Respondent:

        David V. Gliko argued, City Attorney, Great Falls,
        Montana

---

                Submitted:    December 8, 1983

                Decided:    October 1, 1984

Filed:  OCT 1 1984

_Ethel M. Harrison_
_____
              Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Plaintiff, Dennis P. Welsh, appeals from a judgment of the Cascade County District Court denying him all relief on his complaint against the City of Great Falls for wrongful termination as a fireman. Welsh alleged that his termination on August 1, 1980, was without cause, had failed to follow the statutory procedures for termination of firemen, and that because he had a property interest in his employment, he had been denied hearing rights guaranteed to him by the Due Process clauses of the United States and Montana Constitutions. Although we hold that the statutory scheme for termination of firemen did not apply to Welsh where bad health is the alleged reason for the termination, we also hold that Welsh did have a property interest in his position as a fireman and therefore that he could not be terminated without the opportunity for a hearing before an impartial tribunal. We do not reach the question of cause for his termination because that can only be resolved after a proper hearing or after Welsh has properly waived an opportunity for another hearing.

On a separate but related issue, we hold that Welsh is not entitled to payment for all of his accumulated sick leave, as he contends, but is entitled only to the amount set by statute—one fourth of his accumulated sick leave (section 2-18-618(5), MCA). This issue is decided now in order to avoid a possible further appeal where the issue is raised once again.

The trial court ruled that the applicable statutes did not give Welsh any hearing rights where bad health is the

- 2 -

alleged reason for termination, that a series of meetings Welsh had had with his superiors after his health had become an issue, together with the opportunity for an exit interview with the personnel department upon his termination, were sufficient to meet the demands of due process under the Fourteenth Amendment. The trial court did not rule on Welsh's claim that his rights to due process under Art. II, § 17, to the Montana Constitution were violated. Finally, in a bare-bones all-inclusive finding, the trial court ruled that "the Plaintiff (Welsh) acknowledged his physical incapacity and consented to retire." We hold that under Art. II, § 17, of the Montana Constitution, Welsh was denied his right to opportunity for a hearing before an impartial tribunal before he could be lawfully terminated for health reasons.

Plaintiff Welsh began his career as a Great Falls fireman when he was appointed to a six-month probationary period on March 11, 1963. After the probationary period, Welsh was nominated and appointed to serve as a full-time Great Falls fireman. In 1971, however, a benign brain tumor was discovered in Welsh's left temporal lobe. He underwent two successful operations to have the tumor removed, and was placed on medication to control seizure attacks. Welsh returned to duty after a six-month layoff. Welsh was given an office job in the fire prevention bureau for the first year after his return, but was later returned to active firefighting duties. In 1973, Welsh passed the examination for the rank of captain and was promoted to that rank.

In 1977, Welsh suffered a severe seizure at the station house shortly after he had returned from a fire. According to the testimony of a fellow fireman, Welsh passed out in the cab of the fire engine just as it was pulling into the

station. After this incident, Welsh's medication dosage was increased to attempt to prevent further seizure attacks. Three years later, during a drill on July 21, 1980, Welsh was hospitalized for what was diagnosed by the emergency room doctor as "heat exhaustion." Welsh was inside a burning structure and apparently became disoriented and confused, had glazed eyes and was sweating profusely.

After the July 21 incident, Welsh had three meetings with the fire chief, the final one resulting in the fire chief handing Welsh a termination letter effective August 1, 1980. Welsh was also offered an exit interview with the personnel department before his employment terminated, but he declined the interview. The City argues that Welsh did not have a property interest in his position as a fireman, and also that the statutes providing hearing rights to firemen before their termination do not apply, if the alleged reason for termination is for physical incapacity. But assuming the statutes do apply to termination for physical incapacity, the City argues that the three meetings, together with the exit interview that Welsh declined, were sufficient to comply with the spirit of the statutes.

The first meeting took place in the fire chief's office that day after the July 21, 1980, incident that resulted in Welsh's temporary hospitalization for either a seizure or heat exhaustion. Present were Welsh, fire chief Mike Kalovich, and Lee Bright, the operations officer. The emergency room doctor had released Welsh but the fire chief nonetheless told Welsh that he should have a physical examination. The fire chief asked and obtained permission from Welsh to speak to Welsh's doctor, Dr. Douglas Brenton. They also discussed the report from the officer in charge of

- 4 -

the July 21 fire drill, as well as letters from other firefighters who were present at the drill and had observed Welsh's physical reactions during the drill.

The second meeting took place 10 days later (on July 31, 1980) in the fire chief's office after the fire chief had met with Welsh's doctor, Dr. Brenton. Welsh, the fire chief, and the operations officer were present again. The fire chief confronted Welsh with Dr. Brenton's letter and Welsh acknowledged that he had suffered more seizures than were known to the fire chief. When the fire chief suggested that he retire, Welsh replied that if he were in the fire chief's position he "would do the same thing." The City relies on this statement as proving that Welsh consented to retire.

The third and final meeting was five days later, August 5, 1980, when the fire chief handed Welsh his termination letter containing an effective resignation date of August 1, 1980. At the hearing in District Court Welsh testified that when he was given this termination letter he did not consent to his retirement and that he was never told he had a right to a hearing. The City concedes Welsh was not told he had a right to a hearing.

Finally, before the dismissal became final, Welsh was offered the traditional exit interview before the personnel board, but he declined the opportunity for an interview.

Apart from his due process argument, Welsh argues that section 7-33-4124, MCA, gives him a right to a hearing before termination. The City argues that this statute does not apply to a firefighter's termination for bad health, and alternatively, that if it does apply, Welsh was familiar with all of the fire department regulations because he was a

training officer, and therefore that Welsh waived his right to any hearing provided by the statute.

The statute on which Welsh relies, section 7-33-4124, MCA, must be read in conjunction with sections 7-33-4122 and 7-33-4123, MCA. Section 7-33-4122, provides for the appointment of a firefighter and states that the firefighter shall hold the appointment during good behavior and as long as he is physically able to perform the job. The following statute, section 7-33-4123, authorizes the fire chief to suspend a firefighter for "neglect of duty or a violation of any of the rules" of the department. The next statute, the one on which Welsh relies, simply provides for the procedures to be used where a fireman is suspended for neglect of duty or for violating fire department rules.

Section 7-33-4124, provides in part:

"(1) In all cases of suspension the person suspended must be furnished with a copy of the charge against him, in writing, setting forth reasons for the suspension. Such charges must be presented to the next meeting of the council or commission and a hearing had thereon, when the suspended member of the fire department may appear in person or by counsel and make his defense to said charges . . ."

Clearly, this statute provides no hearing remedy for one who is terminated for physical disability. Reading the three statutes together, as we must, they apply only to situations where neglect of duty or violation of rules is the alleged reason for termination. However, notwithstanding this statutory deficiency, we hold that section 7-33-4122, creates a property interest in positions such as that of fireman once the probationary period is satisfied, and therefore that Welsh could not be terminated without first being given the opportunity for a hearing before an impartial tribunal.

Contrary to the City's argument, the statutes applicable to Welsh do not create an employment terminable at the will of the employer. Sections 7-33-4101, et seq., MCA, control the appointment and continued employment of a municipal firefighter in a first class city such as Great Falls. Section 7-33-4122, MCA, provides that once an appointed firefighter has successfully completed his six-month probationary period, the mayor or city manager shall nominate the firefighter for service and the firefighter ". . . shall thereafter hold (his or her) respective appointments during good behavior and while they have the physical ability to perform their duties." Clearly, unless a firefighter neglects his duty or violates fire department rules, or becomes physically disabled, his employment cannot be terminated. Under section 7-33-4122, firefighters hold their appointments as long as they are physically able and as long as they do not neglect their duties or violate the rules. Absent neglect of duty, bad conduct, or physical disability, the appointment of a firefighter lasts until voluntary termination or until retirement.

Our holding that a firefighter has a property interest in his position insofar as the due process clause of our state constitution is concerned, was presaged by the case of State ex rel. Driffill v. City of Anaconda (1910), 41 Mont. 577, 111 P. 345, where this Court in interpreting section 3327, R.C.M. 1947, a predecessor to section 7-33-4113, MCA, stated that the statute "does secure to every paid fireman a right to his position." (Emphasis added.) 41 Mont. at 580-581. Although this statement arose in the Court's discussion of the propriety of a mandamus action brought by a fireman who was wrongfully discharged, and who sought

reinstatement, it is clear that even in 1910 the statute secured to a firefighter "a right to his position." The Court recognized then, as we must, the civil service status of firemen in holding that the statute secured to firemen a "right" to his position. Here, there is also a "right" to the position, subject to the conditions of the statute.

Nor do the City's arguments convince us that the hearing requirement was somehow satisfied or that Welsh waived his right to a hearing. The argument that the meetings between Welsh and the fire chief and operations officer satisfied the hearings requirement cannot be taken seriously. Neither the fire chief nor the operations officer was part of an impartial tribunal, and in fact they were part of the accusatory and confrontational process seeking Welsh's termination--regardless of whether they had good cause. Nor does the offer of the City to give Welsh an exit interview before the personnel board constitute any kind of hearing opportunity. The exit interview could not have given any redress to Welsh, but at most would have been a forum before which he could present his grievances. This in no way constitutes a fair hearing as required by our due process clause.

Finally, the City argues that Welsh waived his rights to a hearing. Although the City's arguments are directed more to the statutory provisions for hearing, which this Court has found inapplicable to a suspension for health reasons, we nonetheless discuss the City's waiver arguments in the context of the constitutional hearing requirement. The City could prevail on the waiver issue only if it had proved that Welsh knew he had a constitutional right to a hearing and that he voluntarily waived that right--a waiver being an

intentional relinquishment of a known right. Gerard v. Sanner, et al. (1940), 110 Mont. 71, 103 P.2d 314. Although a waiver can be express or implied by conduct, in either case it was the City's burden to prove that Welsh waived his right to a hearing. Here the City admits that it did not advise Welsh of his right to a hearing, and there is no evidence to prove that Welsh had independent knowledge of his right to a hearing. For these reasons the City's waiver argument must fail.

Welsh argues also that he was not given his full allotment of sick leave benefits as required by statute, and that these sick leave benefits are a property right that was denied him in this case. Upon his termination Welsh was given one-fourth his accrued sick leave benefits. The statute requires that upon the termination of employment, the employee is entitled to one-fourth his accrued sick leave benefits (section 2-18-618(5), MCA). Welsh argues, however, that the statute speaks only to the situation where one voluntarily terminates his employment rather than to one who is terminated by the employer. He argues that because the statute does not cover his situation, he is entitled to his full accumulated sick leave and that he has been denied a property right if not given his full allotment.

We normally would not discuss this issue because of our dispostion of the primary issue that requires the City to give Welsh a hearing on whether cause exists to terminate him for bad health. However, if it is decided that cause exists to terminate Welsh, the issue of whether Welsh is entitled to his total accumulated sick leave or to one-fourth of his accumulated sick leave, is still one that must be decided. This is true even if after an adverse ruling on the main

issue, Welsh decided not to appeal. It is proper then, to decide the issue now.

Welsh's argument is based on a misplaced reliance on section 2-16-621, MCA, and on a strained construction of section 2-18-618(5), MCA. In relying on section 2-16-621, MCA, Welsh argues that the statute expressly allows him payment for all accumulated sick leave. However, the statute applies only to accumulated vacation benefits. It provides in substance that where one is terminated by the employer the employer must pay the employee for accumulated vacation benefits. And in relying on section 2-18-618(5), Welsh places a most unreasonable construction on the meaning to be given to the failure of the statute to mention involuntary termination. The statute gives one-fourth of the accumulated sick leave pay to an employee who terminates employment or who retires, but it does not mention the case of involuntary retirement. Welsh's contention that he therefore is entitled to full payment for accumulated sick leave because the statute does not mention involuntary termination, is strained at best. A more reasonable construction of the statute's goal is that upon termination of employment for whatever reason, the employee is entitled to one-fourth of his accumulated sick leave. The statute makes no distinction between voluntary or involuntary termination.

We vacate the judgment of the District Court and remand with directions that the case be sent to the City of Great Falls so that they may take the necessary steps for a hearing that accords Welsh his due process rights. Welsh was clearly improperly terminated. It is of no force and effect, and therefore void. He is therefore entitled to full pay and

benefits from the time of his termination until the final disposition of this case.

We do not hold that the City has no authority to suspend a firefighter for health reasons. But we do hold that when it is done, the firefighter's employment does not terminate until such time as he is either given a hearing in accordance with due process requirements or he waives his right to a hearing. Neither of those situations exists here.

We vacate the judgment of the Dictrict Court and remand with directions.

_____
                Justice

We Concur:

_____
        Chief Justice

_____

_____

_____

_____
        Justices

- 11 -

Mr. Justice John Conway Harrison, dissenting.

I respectfully dissent.

I would first hold that there was sufficient cause to terminate the appellant due to his physical impairment. Given his admitted condition, the City had, in my opinion, an unrestricted right to terminate him under section 7-33-4107, MCA, (which applies to the qualifications for the office that he held), and section 7-33-4122, MCA. In my opinion, sections 7-33-4121 and 71-33-4124, MCA do not apply to termination, only to the suspension for neglect of duty or violation of fire department rules. I would find that the appellant had an opportunity for a hearing as provided by our law and it was waived by him.

As noted by the majority opinion, the principal question here is whether the appellant had a property interest in his job such that he can only be terminated by complying with due process requirements, citing Reiter v. Yellowstone County, Montana (1981), 627 P.2d 845, 38 St.Rep. 686. Here the District Court found that the appellant voluntarily retired, so in my opinion the issue of a property interest and due process issue need not be discussed.

Having so found I would find no necessity to discuss the second issue raised herein.

I would uphold the finding of the District Court.

John Conway Harrison
Justice

I join in the foregoing dissent of Mr. Justice John Conway Harrison.

Justice

-12-

Mr. Justice Fred J. Weber dissents as follows:

I respectfully dissent from the majority opinion which concludes that plaintiff was terminated in violation of his due process rights. The majority opinion correctly concludes that plaintiff had a property right protected by the due process clause. However, the majority opinion contains no analysis of what process is due plaintiff under the circumstances of this case and fails to balance the competing rights of plaintiff and defendant.

The majority appears to conclude that because the plaintiff has a property right in his employment, he is automatically entitled under the Montana Constitution to a pretermination hearing. This conclusion is contrary to federal constitutional law on this point. While this Court may interpret the Montana Constitution as providing more protection than the United States Constitution, the majority has completely failed to explain its reasons for applying a stricter rule in this case, requiring back pay and a pretermination hearing. The majority opinion cites no authority for this conclusion.

The United States Supreme Court applies a two-part analysis to resolve due process issues. The Court first determines whether the governmental entity involved has deprived the individual of a constitutionally recognized liberty or property interest. See, e.g., Board of Regents of State Colleges v. Roth (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; Perry v. Sindermann (1972), 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570. If the individual has been deprived of a liberty or property interest, the Court must then determine what process is due under the circumstances. See, e.g., Goldberg v. Kelly (1970), 397 U.S. 254, 90 S.Ct.

1011, 25 L.Ed.2d 287; Mathews v. Eldridge (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18.

"Process" is not a clearly defined term and the nature and timing of the procedure required by the due process clause depends on many factors concerning the individual deprivation. J. Nowak, R. Rotunda and J. Young, Constitutional Law at 498 (1978). The Court uses a balancing test to determine what process is due and considers three factors in this analysis:

> ". . . our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge (1976), 424 U.S. at 334-35, 96 S.Ct. at 903, 47 L.Ed.2d at 33.

The majority has considered only the first of these three factors.

Considering all three factors of the analysis, it is clear that the requirements of due process would be satisfied in this case by a post-termination hearing. While the plaintiff has a substantial property interest at stake, the risk of erroneous deprivation of that interest through the procedures used by the defendant in this case is nearly nonexistent. There was no dispute between the parties that the plaintiff was physically unable to continue working as a firefighter. That was the conclusion of his own doctor. Under section 7-33-4122, MCA, plaintiff, as a firefighter, holds his appointment with the City "while [he has] the physical ability to perform [his] duties." Without dispute, plaintiff no longer had the physical ability to perform his

-14-

duties. For the protection of fellow firefighters, the public, and the City itself, the defendant was required to terminate plaintiff if he did not resign voluntarily. It is obvious that under these facts, "additional or substitute procedural safeguards" would have had no "probable value."

The majority opinion has not considered the interests of the City in the fiscal and administrative burdens imposed by the pretermination hearing requirement in this case. Even though it is undisputed that plaintiff was physically unable to work as a firefighter, the majority opinion requires the City to grant plaintiff full pay and benefits from the date of the termination to the final disposition of the case. The City will be required to provide a hearing, the requirements of which are not specified in the majority opinion, to determine an issue that is already determined beyond dispute. This places fiscal and administrative burdens on the City which simply are not justified in this case.

I disagree that due process requires a pretermination hearing in this case. Cf. Arnett v. Kennedy (1974), 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (no due process pretermination hearing requirement for government employee under facts of that case). I would hold that the requirements of due process would best be served by a procedure which fairly balances the interests of the parties as follows:

> (1) A post-termination hearing, with all due process rights, at which the plaintiff fireman and the defendant City could present all of the facts. If my conclusion that the termination was proper is incorrect, then an award could properly be made to the plaintiff granting him back pay from the date of termination.

> (2) If the termination is found to have been proper, then the City would not be penalized by the payment of compensation to the plaintiff from the date of termination.

This procedure would fully protect the interests of the plaintiff. I would remand the case for application of this procedure.

_____
Justice