No. 97-516

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 164

THOMAS ALAN PARK,

Petitioner,

v.

MONTANA SIXTH JUDICIAL DISTRICT COURT, PARK COUNTY;

HON. WM. NELS SWANDAL, Presiding Judge; and STATE OF MONTANA,

Respondents.

ORIGINAL PROCEEDING

COUNSEL OF RECORD:

For Petitioner:

Daniel P. Buckley; Berg, Lilly, Andriolo and Tollefsen;

Bozeman, Montana; and Herman A. Watson III and

Anne H. Watson (argued); Watson Law Offices; Bozeman, Montana

For Respondent

Hon. Joseph P. Mazurek, Attorney General; Carol Schmidt (argued),

Assistant Attorney General; Helena, Montana

Tara DePuy, Park County Attorney; Livingston, Montana

For *Amici Curiae*:

John P. Connor, Jr. (argued), Assistant Attorney General, County

Prosecutor Services Bureau Chief; Helena, Montana

(for Montana County Attorneys' Association)

William F. Koeppen; Koeppen Law Office; Bozeman, Montana

(for Montana Association of Criminal Defense Lawyers)

Gary E. Wilcox and L. Sanford Selvey II; Yellowstone County

Public Defender's Office; Billings, Montana

(for Yellowstone County Public Defender's Office)

Heard: April 3, 1998

Submitted: April 14, 1998

Decided: June 25, 1998

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶1 The defendant, Thomas Alan Park, was charged in the District Court for the Sixth Judicial District in Park County with deliberate homicide and forgery. After he identified mental health care providers who would testify on his behalf, the District Court ordered Park to submit to a psychological examination by the State's expert.**

Park objected and applied to this Court for a writ of supervisory control. We assume supervisory control, affirm in part and reverse in part the order of the District Court, and remand this case to the District Court for proceedings consistent with this opinion.

¶2 There are three issues before this Court:

¶3 1. Is supervisory control appropriate in this case?

¶4 2. Is the State entitled to a psychological examination of a defendant by its own expert for the purpose of rebuttal when the defendant has asserted the affirmative defense of mitigated deliberate homicide due to extreme mental or emotional stress?

¶5 3. If the answer to the preceding question is in the affirmative, to what extent must the defendant answer questions regarding acts of which he is accused?

## FACTUAL BACKGROUND

¶6 On July 15, 1996, Thomas Alan Park was charged in the District Court for the Sixth Judicial District in Park County with deliberate homicide and forgery. On August 27, 1996, the State filed its notice of intent to seek the death penalty in the event that Park is convicted.

¶7 On July 8, 1997, Park filed his notice of affirmative defenses. He asserted that he "acted under the influence of extreme mental or emotional stress for which there was a reasonable explanation or excuse," and that he "acted with justifiable use of force." Park submitted a list of potential witnesses who would testify in support of the defenses, including Susan Sachsenmaier, Ph.D., a forensic psychologist, and Dr. Joseph Rich, a psychiatrist. In response to Park's notice of intent to use expert psychological testimony, the State requested an examination of Park by William Stratford, M.D. Park's attorney originally agreed to Dr. Stratford's examination.

¶8 However, on two separate occasions, when Dr. Stratford attempted to evaluate Park, Park refused to cooperate. He stated that he would only fill out the written testing material that Dr. Stratford provided. Based in part on Park's refusal to cooperate, the State moved for sanctions and an order to prohibit Park from introducing any evidence, including expert testimony, regarding the extreme mental

or emotional stress defense. After a hearing at which Dr. Stratford testified about his need to interview Park, the District Court renewed its order and allowed the examination of Park. In addition, the order was amended to permit Dr. Stratford to question Park regarding the acts of which he was accused. The District Court then stayed the order and allowed Park to submit a brief in opposition to the examination.

¶9 In his brief, Park withdrew his attorney's earlier consent to allow Dr. Stratford's examination. Park contended that the State was not entitled to an examination because his defense was not based on a mental disease or defect and, therefore, was not the type for which a state examination is statutorily provided. In addition, Park challenged that part of the District Court's order which compelled Park to discuss with Dr. Stratford facts related to the charges against him on the bases that such inquiry was not authorized by statute and violated his rights provided for by the Fifth Amendment to the United States Constitution, and Article II, Section 25, of the Montana Constitution.

¶10 After another hearing, the District Court issued an order which required Park to submit to the State's examination and answer questions about events related to the charges against him or suffer the sanction of having his own expert testimony excluded. The District Court explained that Park, by voluntarily raising the affirmative defense of mitigated deliberate homicide based on extreme mental or emotional stress, had waived the right to remain silent about the acts with which he was charged. It found that in order for Dr. Stratford to be able to discuss at trial Park's mental state at the time of the alleged offense, he needed to examine Park regarding the alleged offense. Finally, the order restricted the State's experts from disclosing to the State any incriminating statements made by Park during their examination, and stated that the experts could only testify regarding their conclusions in rebuttal to Park's expert testimony.

¶11 On September 4, 1997, the District Court conducted another hearing at which the record was supplemented with Sachsenmaier's testimony in anticipation of Park's application to this Court for a writ of supervisory control. She testified that her diagnosis of Park was that he was under extreme mental or emotional stress at the time of the alleged offense, and that it would not be necessary to interview the defendant in order to evaluate his mental status. The District Court's order was not modified following that hearing, and Park's petition followed.

# ISSUE 1

¶12 **Is supervisory control appropriate in this case?**

¶13 **We held in *Plumb v. Fourth Judicial District Court* (1996), 279 Mont. 363, 368-69, 927 P.2d 1011, 1014-15, that we will assume supervisory control over a district court to control the course of litigation where the district court is proceeding based on a mistake of law which, if uncorrected, would cause significant injustice, and where the remedy by appeal is inadequate. Our determination of whether supervisory control is appropriate is a case-by-case decision, based on the presence of extraordinary circumstances and a particular need to prevent an injustice from occurring. *See State ex rel. Mazurek v. District Court* (1996), 277 Mont. 349, 352-53, 922 P.2d 474, 476-77.**

¶14 **In this case, the District Court's order implicates Park's constitutional right not to be a witness against himself. Once violated, the damage cannot be undone on appeal.**

¶15 **It is well-recognized that a normal appeal is generally inadequate when a party's constitutional or statutory privilege is at stake. *See State ex rel. Mapes v. District Court* (1991), 250 Mont. 524, 529, 822 P.2d 91, 94; *State ex rel. Burlington N. R.R. Co. v. District Court* (1989), 239 Mont. 207, 212, 779 P.2d 885, 889; *see also Emergency Care Dynamics, Ltd. v. Superior Court* (Ariz. Ct. App. 1997), 932 P.2d 297; *Arizona Bd. of Med. Examiners v. Superior Court* (Ariz. Ct. App. 1996), 922 P.2d 924; *City of Fresno v. Superior Court* (Cal. Ct. App. 1988), 253 Cal. Rptr. 296; *State ex rel. Stephan v. O'Keefe* (Kan. 1984), 686 P.2d 171; *City of Alhambra v. Superior Court* (Cal. Ct. App. 1980), 168 Cal. Rptr. 49; *Glade v. Superior Court* (Cal. Ct. App. 1978), 143 Cal. Rptr. 119. In *Mapes*, for example, this Court granted supervisory control to address a defendant's right of access to confidential communications between the plaintiff and his psychologist. We held that "[o]nce confidential communications have been disclosed or publicized, the damage cannot be undone on appeal." *Mapes*, 250 Mont. at 529, 822 P.2d at 94.**

¶16 **The same principle applies in this case, where the District Court's order has the effect of compelling Park to disclose potentially privileged testimony. As soon as Park has been made to disclose that which his constitutional privilege may allow him to withhold, the constitutional protection can serve no purpose, certainly not a retroactive one, and an appeal cannot restore that which has already been violated.**

**¶17 Furthermore, the State's right to its own examination of the defendant under the circumstances presented is a strictly legal issue of statewide importance which is presented for the first time.**

**¶ 18Accordingly, we assume supervisory control to consider the issues raised by Park's petition.**

ISSUE 2

**¶19 Is the State entitled to a psychological examination of a defendant by its own expert for the purpose of rebuttal when the defendant has asserted the affirmative defense of mitigated deliberate homicide due to extreme mental or emotional stress?**

**¶20 Park contends that the State is not entitled to a psychological examination by its own expert. He claims that the circumstances in this case are not covered by the language of §§ 46-14-204 and -205, MCA, because he does not claim a mental disease or defect, and that *State v. Hess* (1992), 252 Mont. 205, 828 P.2d 382, is inapplicable because it was based on the justifiable use of force defense.**

**¶21 Section 46-14-204, MCA, states that "[w]hen the defense . . . files a notice of the intention to rely on a defense of mental disease or defect, the prosecution is entitled to have the defendant examined by a qualified psychiatrist or licensed clinical psychologist." Section 46-14-205, MCA, states:**

> If either the defendant or the prosecution wishes the defendant to be examined by a qualified psychiatrist or licensed clinical psychologist selected by the one proposing the examination in order to determine the defendant's fitness to proceed or whether the defendant had, at the time the offense was committed, a particular state of mind that is an essential element of the offense, the examiner shall be permitted to have reasonable access to the defendant for the purpose of the examination.

*Hess* is the only case in which we have interpreted the State's right to evaluate a defendant pursuant to these statutes.

¶22 The defendant in *Hess* raised the affirmative defense of justifiable use of force based on battered woman syndrome in response to the charge of deliberate homicide. She offered notice of her intent to be examined by and to call a psychiatric expert on battered woman syndrome. In response, the State gave notice of intent to have two of its own experts on battered woman syndrome rebut the defendant's expert testimony, and received an order from the District Court that required the defendant to submit to an examination by the State's experts. After her conviction for mitigated deliberate homicide, the defendant appealed to this Court and asserted, among other things, that she had not raised a mental disease or defect defense, and that the statute does not authorize an examination by the State for a justified use of force defense based on battered woman syndrome. Accordingly, she contended that the district court had no authority to order the State's examination.

¶23 We rejected the defendant's position and held that the statute, § 46-14-212, MCA (1989) (*renumbered* § 46-14-205, MCA (1991)), "authorizes the State to request a mental evaluation once the defendant's mental state is at issue." *Hess*, 252 Mont. at 213, 828 P.2d at 388. Furthermore, we held that the defendant's reliance on the defense of justifiable use of force based on battered woman syndrome and her reliance on expert psychological testimony to support her defense put her mental state at issue. Therefore, we concluded that the district court had authority to order the examination despite the lack of a specific reference in the statute to the defense of justifiable use of force based on battered woman syndrome. *See Hess*, 252 Mont. at 213, 828 P.2d at 388. In other words, we held that the statute permits the State to evaluate a defendant whenever he or she has raised mental state as an issue and notified the State of an intention to introduce expert opinion testimony regarding that issue.

¶24 We conclude that based on the *Hess* decision, the State is also entitled to its own examination in this case.

¶25 Section 45-5-103(1), MCA, defines mitigated deliberate homicide as follows:

> A person commits the offense of mitigated deliberate homicide when the person purposely or knowingly causes the death of another human being but does so under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse. The reasonableness of the explanation or excuse must be determined from the viewpoint of a reasonable

person in the actor's situation.

¶26 Mitigated deliberate homicide is an affirmative defense which clearly depends on proof of Park's mental state at the time of the acts alleged, and he has notified the State that he intends to prove his mental condition through use of expert psychological or psychiatric testimony. Fairness requires no less than that the State be allowed the opportunity to meet and test that proof.

¶27 However, we do not here hold that the State is entitled to examine the defendant in every case in which mitigated deliberate homicide is raised--only in those cases where a defendant expresses an intention to prove his mental condition with expert testimony.

¶28 Park has suggested that the State be allowed an examination only if and when Park actually offers psychological testimony at trial. He contends that his notice of intent to make the affirmative defense of mitigated deliberate homicide based on extreme mental or emotional stress and to present expert psychological testimony in support of the defense does not bind him to the defense, and that if he opts not to present psychological evidence at trial, he will have been forced to offer privileged evidence to the State which could be used to incriminate him regardless of the nature of his defense.

¶29 We note first that the State's right to a psychological examination exists for the limited purpose of rebuttal, and as the District Court did here, the order for an examination can be narrowly tailored and place restrictions on the State's use of its expert's examination. Second, Park's concerns about incriminating himself during parts of his examination are addressed in the next part of this opinion. Finally, the statute relates the State's right to an examination to the defendant's notice of his defense and does not make it contingent upon the actual presentation of expert psychological testimony at trial. To postpone the State's examination until mid-trial would delay the District Court proceedings and deprive the State of an adequate opportunity to prepare its rebuttal. Accordingly, we conclude there is no basis to postpone the State's evaluation until Park actually presents his defense.

¶30 Accordingly, we affirm that part of the District Court's order which required

that Park submit to a psychological examination by the State's expert.

ISSUE 3

¶31 If the answer to the preceding question is in the affirmative, to what extent must the defendant answer questions regarding acts of which he is accused?

¶32 In *Hess*, we considered the issue discussed in Issue 2 of this opinion. However, the order reviewed in that case stated in relevant part "[t]hat such evaluation shall be made subject to defendant's constitutional and statutory rights not to make statements or produce documents that may incriminate her." *Hess*, 252 Mont. at 212, 828 P.2d at 387. Therefore, *Hess* is not authority for that part of the District Court's order which requires that Park discuss the day in question with the State's expert. Park has challenged separately that aspect of the District Court's order on state constitutional and Fifth Amendment grounds.

¶33 Article II, Section 25, of the Montana Constitution, and the Fifth Amendment of the United States Constitution, prohibit the State from compelling self-incriminating statements from a defendant. *See also State v. Fuller* (1996), 276 Mont. 155, 160, 915 P.2d 809, 812. The issue presented is whether a defendant may refuse to discuss with the State's expert the events surrounding the charges against him on the basis that it would be self-incriminating and, if so, whether his refusal should limit the proof he might otherwise offer.

¶34 The State contends that the U.S. Supreme Court's decision in *Buchanan v. Kentucky* (1987), 483 U.S. 402, 107 S. Ct. 2906, 97 L. Ed. 2d 336, stands for the proposition that a defendant who has raised his mental state as an issue waives his Fifth Amendment privilege for all purposes. We disagree. *Buchanan* relied, at least in part, on the facts that the expert testimony was requested by the defendant's own attorney and did not describe "*any* statements by [the defendant] dealing with the crimes for which he was charged." *Buchanan*, 483 U.S. at 423, 107 S. Ct. at 2918, 97 L. Ed. 2d at 356. Accordingly, *Buchanan* is distinguishable from this case, and does not support the State's contention that a defendant waives entirely his right to remain silent when he raises his mental state as a defense and offers psychological testimony.

¶35 First and foremost, we recognize that if a defendant's privilege not to incriminate

himself is to have any force, it must mean that he can decide with whom and in what terms he discusses such potentially incriminating matters as the events surrounding the charges against him. Further, a defendant's right to remain silent applies at all stages of a criminal proceeding. *See Minnesota v. Murphy* (1984), 465 U.S. 420, 426, 104 S. Ct. 1136, 1141-42, 79 L. Ed. 2d 409, 418; *Fuller*, 276 Mont. at 160, 915 P.2d at 812. Therefore, a defendant clearly carries the privilege with him into a psychological examination with the State's expert. *See, e.g., Estelle v. Smith* (1981), 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359.

¶36 The State implies throughout its argument that Park has waived his right to remain silent with his voluntary introduction of a mental status defense and his use of expert psychological testimony in support of that defense. It is well-established, however, that a defendant's waiver of his constitutional rights must be made specifically, voluntarily, and knowingly, and we will not engage in presumptions of waiver. *See Johnson v. Zerbst* (1938), 304 U.S. 453, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, 1466; *State v. Lucero* (1968), 151 Mont. 531, 538, 445 P.2d 731, 735; *see also State v. Okland* (1997), 283 Mont. 10, 14-15, 941 P.2d 431, 433-34 (discussing the right to counsel); *State v. Dawson* (1988), 233 Mont. 345, 351-52, 761 P.2d 352, 356 (discussing the right to prohibit warrantless searches and seizures); *Welsh v. City of Great Falls* (1984), 212 Mont. 403, 411, 690 P.2d 406, 411 (discussing the due process right to a hearing); *State v. Carlson* (1982), 198 Mont. 113, 120-21, 644 P.2d 498, 502 (discussing the right to prohibit warrantless searches and seizures); *State v. Blakney* (1982), 197 Mont. 131, 134, 641 P.2d 1045, 1047-48 (discussing the right to counsel). The mere fact that a defendant wishes to introduce psychological testimony and therefore must cooperate during an examination so that the State has the opportunity to rebut his expert testimony is insufficient to constitute a complete waiver of his right to remain silent. Accordingly, we conclude that a defendant has a constitutional right to remain silent when asked by the State's psychological expert about the events surrounding the alleged offense.

¶37 It does not follow, however, that a defendant's right to remain silent when questioned by the State's expert about the alleged offense should afford an opportunity to place unrebuttable testimony before the jury. *See also Estelle*, 451 U.S. at 465, 101 S. Ct. at 1874, 68 L. Ed. 2d at 370 (recognizing that despite a defendant's Fifth Amendment protection, he can be required to submit to an examination by the State's expert when he introduces psychiatric testimony and his silence would deprive the State of its only effective means of rebutting that testimony

**which he introduced).**

**¶38 We agree with the position of the County Attorneys' Association, as expressed in its** *amicus* **brief to this Court, that if Park refuses to discuss the events related to the charges against him with the State's expert, and then also exercises his right to remain silent at trial, his own expert should be not allowed to serve as a conduit for his version of events surrounding and related to the alleged offense by relating to the jury what Park told him or her. Such a situation would be analogous to a defendant taking the stand, but refusing to submit to cross-examination. We held in** *State v. Wilson* **(1981), 193 Mont. 318, 325, 631 P.2d 1273, 1277, that a defendant "could not take the stand to testify in her own behalf and also claim the [Fifth Amendment] right to be free from cross-examination on matters raised by her own testimony on direct examination." The same principle applies here. A defendant cannot put before the jury his version of events through expert psychological testimony and refuse to answer questions from the State's expert regarding those same events.**

**¶39 We further hold that if Park declines to discuss with the State's expert the facts related to the crime with which he is charged, and then waives his right to remain silent by testifying at trial, the State's expert should be allowed to listen to that part of his testimony which relates to those events, as well as the defense expert's testimony about what he or she was told about those events, and respond where he or she deems it appropriate.**

**¶40 We affirm that part of the District Court's order that compels Park to submit to an examination by the State's expert. We reverse that part of the District Court's order that compels Park to answer questions during the examination regarding the alleged offense, but hold that if he refuses to answer those inquiries by the State's expert, and also remains silent at trial, he may not offer that evidence through his expert. We remand this case to the District Court for further proceedings consistent with this opinion.**

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

Justice W. William Leaphart, specially concurring.

**¶41 I concur in the opinion of the Court and write separately to elaborate on one particular point. The Court holds, and I agree that, "the State's right to a psychological examination exists for the limited purpose of rebuttal, and as the District Court did here, the order for an examination can be narrowly tailored and place restrictions on the State's use of its expert's examination."**

**¶42 The defendant in this case has raised the "defense" of mitigated deliberate homicide. That is, he contends that he acted under "extreme mental or emotional stress for which there is reasonable explanation or excuse." Section 45-5-103(1), MCA. It is important to distinguish this defense from self-defense or justifiable use of force that was raised in State v. Hess (1992), 252 Mont. 205, 828 P.2d 382. Justifiable use of force, if proven, is a complete defense resulting in an acquittal. Extreme mental or emotional stress, on the other hand, results not in an acquittal, but in a conviction of the lesser offense of mitigated deliberate homicide. Thus, a defendant who raises mitigated deliberate homicide as a defense and who submits to an examination by a State psychologist is, in effect, convicting himself of a crime. Accordingly, the trial court can, and should, impose restrictions upon the State's use of such evidence. However, independently of any restrictions imposed by the trial court, there are constitutional limitations that pertain under the Fifth Amendment to the United States Constitution and Article II, Section 25 of the Montana Constitution. As the Court points out, when the defendant proposes to prove the defense of extreme emotional stress through use of an expert, the State is entitled to have the defendant examined by its own expert so, in fairness, it will have an opportunity to rebut the defendant's expert testimony. The fruits of the State's examination can only be used to rebut the defendant's defense. The State, having**

**obtained the defendant's testimony concerning mental stress, cannot, for example, drop the deliberate homicide charge and file new charges for mitigated deliberate homicide. Such use of the evidence would obviously be beyond what the defendant would reasonably be expected to anticipate and would offend the constitutional prohibitions against self-incrimination.**

/S/ W. WILLIAM LEAPHART