148 P.3d 1273

STATE of Idaho, Plaintiff–Respondent,

v.

David SANTISTEVAN, Defendant–
Appellant.

No. 31918.

Court of Appeals of Idaho.

Oct. 2, 2006.

Roark Law Firm, LLP, Hailey, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Thomas R. Tharp, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

A jury found David Santistevan guilty of two counts of attempted murder in the second degree. He appeals his conviction, contending that the district court violated Santistevan's Fifth Amendment privilege against self-incrimination and his psychotherapist-patient privilege when it compelled him to submit to a mental examination by a psychologist for the State.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Santistevan was charged with two counts of attempted murder in the second degree, Idaho Code §§ 18–4001, –4003(g), –306(1), with an enhancement for use of a firearm, I.C. § 19–2520, after he shot two young men during an altercation in an alley in Bellevue, Idaho. Prior to trial he employed, at state

expense, a psychiatrist who examined Santistevan for purposes of aiding in his defense. Initially, defense counsel was undecided as to whether the psychiatrist, Dr. Worst, would testify at trial. Three weeks before trial, however, defense counsel sent the prosecutor a letter stating that Dr. Worst would be called as an expert witness to present evidence of Santistevan's mental condition. The letter included a synopsis of Dr. Worst's expected testimony. The State filed a motion to exclude Dr. Worst's testimony for non-compliance with the notice requirements prescribed by I.C. § 18–207(4) or, in the alternative, seeking leave for a mental examination of the defendant by a State expert.

The district court denied the State's motion to prevent Dr. Worst from testifying, holding that the defendant's interest in a fair trial was paramount and should not be impaired as a consequence of defense counsel's late disclosure. Instead, the district court postponed the trial and ordered that Santistevan submit to an examination by a psychologist for the State, Dr. Robert Engle, in order to allow the State to meet the defense evidence. This order imposed a number of procedural requirements and restrictions on the conduct of Dr. Engle's examination and on the use of the resulting evidence, with the purpose of protecting the defendant.[1] An examination by Dr. Engle was performed in accordance with the order. At trial, Dr. Worst testified for the defense, but the State did not call Dr. Engle to testify. The jury returned verdicts of guilty.

Santistevan appeals. He asserts that the order compelling him to submit to the examination by Dr. Engle violated his Fifth Amendment privilege against self-incrimination[2] and his psychotherapist-patient privilege under Idaho Rule of Evidence 503.

1. The district court ordered:

1) That defendant David Santistevan may forthwith be examined by the State's experts concerning his mental state. This examination and testing by the State may include, but is not limited to examination of defendant's mental processes, his IQ, his memory, his recall of events unrelated to the charge, and his childhood/history. In addition, the State's experts may inquire of defendant as to his memory/recall and or his mental condition at the time of the alleged events for which he is charged. *See Park v. Montana 6th Judicial District Court*, 289 Mont. 367, 961 P.2d 1267 (1998).

2) Defendant's attorney Douglas Nelson may be present during any and all such examinations and or testing.

3) Any evidence obtained by the State's experts during and in the course of such examination may only be used by the State for rebuttal purposes as outlined further below. The State may not present any such evidence on their case in chief. Any statements or evidence obtained by the State's experts during the course of this examination shall be disclosed ONLY TO THE STATE'S ATTORNEYS AND NO ONE ELSE. The State's attorneys may not disclose to any police officer or any other agent of the state, (other than an attorney employed directly by the State for purposes of this case), any evidence obtained by the State's experts during the course of this examination The State will bear the burden of showing that any evidence discovered by the State after this mental examination of the defendant by the State's expert was not connected in any fashion to any statement made by the defendant to the State's experts.

4) The State's right to conduct a mental examination of the defendant is not contingent on the [sic] whether the defendant elects to call Dr. Worst to testify at trial. Defendant has already elected to put his mental status an [sic] issue, which in and of itself invokes the State's right to conduct the foregoing examination.

5) During the course of any examination by the State's experts, defendant does have a constitutional right to remain silent when asked by the State's experts about the events surrounding the alleged offense. *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *Park v. Montana 6th Judicial District Court*, 289 Mont. 367, 961 P.2d 1267 (1998). Defendant shall also be advised, and is hereby advised, that any incriminating statements he makes to the State's experts could be used against him at trial, in the event defendant places his mental status in issue at trial. In addition, defendant shall be advised, and is hereby advised that any incriminating statements he makes to the State's experts might be used against him at sentencing, even if not used at trial, and even if not placed an [sic] issue by the defense at sentencing.

6) The State may not use Dr. Worst's notes or any information the defendant gave Dr. Worst about the alleged incident in their case in chief nor can the State's expert use any information gleaned from Dr. Worst's reports or notes except in rebuttal.

7) If defendant Santistevan refuses to discuss the events related to the charges against with the State's expert, then ... defendant will be precluded from offering testimony on the issue of his mental state as it relates to an element of the offense.

2. Santistevan also asserts that his privilege against self-incrimination under Article I, section

## II.

## ANALYSIS

### A. Privilege Against Self–Incrimination

■ The Fifth Amendment to the United States Constitution provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." Santistevan argues that a compelled mental examination is a *per se* violation of this constitutional privilege against self-incrimination.

■ We disagree. Although neither the United States Supreme Court nor the Idaho appellate courts have directly addressed the issue, virtually all federal circuit courts and state appellate courts considering the matter have held that if a defendant announces an intention to introduce psychiatric evidence to support a claim of mental defect, a court-ordered mental examination of the defendant by an expert for the State does not violate the privilege against self-incrimination. *See United States v. Byers,* 740 F.2d 1104, 1115 (D.C.Cir.1984); *United States v. Halbert,* 712 F.2d 388, 390 (9th Cir.1983); *United States v. Madrid,* 673 F.2d 1114, 1121 (10th Cir.1982); *United States v. Cohen,* 530 F.2d 43, 47–48 (5th Cir.1976); *United States v. Handy,* 454 F.2d 885, 888–89 (9th Cir.1971); *United States v. Bohle,* 445 F.2d 54, 66–67 (7th Cir. 1971), *overruled on other grounds, United States v. Lawson,* 653 F.2d 299 (7th Cir. 1981); *United States v. Baird,* 414 F.2d 700, 708–09 (2d Cir.1969); *United States v. Albright,* 388 F.2d 719, 724–25 (4th Cir.1968); *Pope v. United States,* 372 F.2d 710, 720–21 (8th Cir.1967), *vacated and remanded on other grounds,* 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968); *United States v. White,* 21 F.Supp.2d 1197, 1200 (E.D.Cal.1998); *State v. Schackart,* 175 Ariz. 494, 858 P.2d 639, 645 (1993); *State v. Fair,* 197 Conn. 106, 496 A.2d 461, 463 (1985); *White v. United States,* 451 A.2d 848, 852 (D.C.1982); *State v. Whitlow,* 45 N.J. 3, 210 A.2d 763, 767 (1965); *State v. Martin,* 950 S.W.2d 20 (Tenn.1997);

*State v. Cerar,* 60 Utah 208, 207 P. 597, 602 (1922).

While the grounds for the decisions vary, *see Byers,* 740 F.2d at 1111–13 (analyzing various justifications advanced by the courts), the overarching rationale can be described as one of fundamental fairness and judicial common sense, taking practical considerations into account in determining the reach of the Fifth Amendment privilege against self-incrimination. As the *Byers* court explained, when a defendant introduced psychiatric testimony to show why he should not be punished for a crime, "the state must be able to follow where he has led." *Id.* at 1113. To hold that the Fifth Amendment prevents a compelled examination in this circumstance would deprive the State of the only adequate means to meet the defense expert's testimony.

This rationale finds support in United States Supreme Court decisions addressing the privilege against self-incrimination. In *Fitzpatrick v. United States,* 178 U.S. 304, 315–16, 20 S.Ct. 944, 948–49, 44 L.Ed. 1078, 1083–84 (1900), for example, the Court held that a criminal defendant may not testify at trial on his own behalf and then assert a Fifth Amendment privilege to be free from cross-examination on matters raised by his own testimony on direct examination. And in *Estelle v. Smith,* 451 U.S. 454, 465, 101 S.Ct. 1866, 1874, 68 L.Ed.2d 359, 370 (1981), the Court noted, "When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case." *See also Brown v. United States,* 356 U.S. 148, 155–56, 78 S.Ct. 622, 626–27, 2 L.Ed.2d 589, 596–98 (1958).

■ Under Idaho law, insanity or other mental condition is not a defense to a crime, I.C. § 18–207(1), but expert evidence is admissible "on the issue of any state of mind

13 of the Idaho Constitution was violated. Because he has not argued that the corresponding state constitutional provision affords greater or different protections than the Fifth Amendment, we will not separately address the state constitutional claim. *See State v. Ross,* 129 Idaho 380, 381, 924 P.2d 1224, 1225 (1996); *State v. Jordan,* 122 Idaho 771, 772 n. 2, 839 P.2d 38, 39 n. 2 (Ct.App.1992).

which is an element of the offense." I.C. § 18–207(3).[3] That is, a defendant may present evidence of a mental disease or defect to negate the intent or other *mens rea* element of the charged crime. *State v. Searcy,* 118 Idaho 632, 635–36, 798 P.2d 914, 917–18 (1990); *State v. Beam,* 109 Idaho 616, 621, 710 P.2d 526, 531 (1985); *State v. Patterson,* 126 Idaho 227, 229, 880 P.2d 257, 259 (Ct. App.1994). It was apparently on this basis that Santistevan proffered the expert testimony of Dr. Worst. Having thus elected to rely upon expert testimony concerning his mental health to negate an element of the charged offenses, Santistevan was correctly foreclosed by the trial court from relying upon the privilege against self-incrimination to avoid a mental health examination by the State's expert.

Santistevan relies upon a single decision, *State v. Odiaga,* 125 Idaho 384, 871 P.2d 801 (1994), in support of his proposition that the compelled examination violated his privilege against self-incrimination. In *Odiaga,* in response to the defendant's indication that he intended to present evidence of his mental illness, the State moved to compel a psychiatric evaluation, and the district court granted the motion. On appeal, the Idaho Supreme Court held that the district court had erred. As the basis for its ruling the Supreme Court said:

> The Fifth Amendment to the United States Constitution and article I, section 13 of the Idaho Constitution prohibit compelling a criminal defendant to be a witness against himself or herself. Following Idaho's repeal of the insanity defense, no stat-

3. Idaho Code § 18–207 states:

   (1) Mental condition shall not be a defense to any charge of criminal conduct.

   (2) If by the provisions of section 19–2523, Idaho Code, the court finds that one convicted of crime suffers from any mental condition requiring treatment, such person shall be committed to the board of correction or such city or county official as provided by law for placement in an appropriate facility for treatment, having regard for such conditions of security as the case may require. In the event that a sentence of incarceration has been imposed, the defendant shall receive treatment in a facility which provides for incarceration or less restrictive confinement. In the event that a course of treatment thus commenced shall be concluded prior to the expiration of the sentence imposed, the offender shall remain liable for the remainder of such sentence, but shall have credit for time incarcerated for treatment.

   (3) Nothing herein is intended to prevent the admission of expert evidence on the issue of any state of mind which is an element of the offense, subject to the rules of evidence.

   (4) No court shall, over the objection of any party, receive the evidence of any expert witness on any issue of mental condition, or permit such evidence to be placed before a jury, unless such evidence is fully subject to the adversarial process in at least the following particulars:

   (a) Notice must be given at least ninety (90) days in advance of trial, or such other period as justice may require, that a party intends to raise any issue of mental condition and to call expert witnesses concerning such issue, failing which such witness shall not be permitted to testify until such time as the opposing party has a complete opportunity to consider the substance of such testimony and prepare for rebuttal through such opposing expert(s) as the party may choose.

   (b) A party who expects to call an expert witness to testify on an issue of mental condition must, on a schedule to be set by the court, furnish to the opposing party a written synopsis of the findings of such expert, or a copy of a written report. The court may authorize the taking of depositions to inquire further into the substance of such reports or synopses.

   (c) Raising an issue of mental condition in a criminal proceeding shall constitute a waiver of any privilege that might otherwise be interposed to bar the production of evidence on the subject and, upon request, the court shall order that the state's experts shall have access to the defendant in such cases for the purpose of having its own experts conduct an examination in preparation for any legal proceeding at which the defendant's mental condition may be in issue.

   (d) The court is authorized to appoint at least one (1) expert at public expense upon a showing by an indigent defendant that there is a need to inquire into questions of the defendant's mental condition. The costs of examination shall be paid by the defendant if he is financially able. The determination of ability to pay shall be made in accordance with chapter 8, title 19, Idaho Code.

   (e) If an examination cannot be conducted by reason of the unwillingness of the defendant to cooperate, the examiner shall so advise the court in writing. In such cases the court may deny the party refusing to cooperate the right to present evidence in support of a mental status claim unless the interest of justice requires otherwise and shall instruct the jury that it may consider the party's lack of cooperation for its effect on the credibility of the party's mental status claim.

utory scheme remains through which a psychological evaluation can be compelled without threatening the rights guaranteed under both of those constitutions.

*Id.* at 391, 871 P.2d at 808. The Court also declined to hold that the district court had inherent authority to compel a psychiatric evaluation. *Id.*[4] Lastly, the Court stated that the procedure employed, in the absence of a statutory scheme through which a psychological evaluation could be compelled, "implicated" the psychotherapist-patient privilege under I.R.E. 503. *Id.*

We understand *Odiaga* to be a statutorily-based decision recognizing that in repealing statutes that authorized an insanity defense, the Idaho legislature had also repealed the statutes that had provided authority for the State to compel a psychological examination. Because the Idaho legislature subsequently enacted I.C. § 18–207(4), which authorizes the trial courts to order a defendant to submit to examination by a state's expert if the defendant has raised an issue of mental condition, the portion of *Odiaga* upon which Santistevan relies appears to have no present applicability. That is, *Odiaga* was based upon a statutory void that no longer exists.

We therefore adhere to the common sense rule, adopted by virtually every other jurisdiction in this country, that as a general proposition, if a defendant has indicated an intent to introduce psychiatric evidence in his defense, a compelled mental examination of the defendant by a state's expert does not violate the Fifth Amendment privilege against self-incrimination.

### B. Idaho Rule of Evidence 503

■ Santistevan also argues that the compelled mental examination violated the psychotherapist-patient privilege under I.R.E. 503(b)(2), which creates a privilege in a criminal action to refuse disclosure of confidential communications that were made to a person's psychotherapist for purposes of diagnosis or treatment of a mental or emotional condition.[5] We can discern no merit in this claim of error, for Santistevan's communications to Dr. Engle plainly were not subject to the Rule 503 privilege.

First, Rule 503(d)(3) provides that no privilege attaches "to a communication relevant to an issue of the physical, mental or emotional condition of the patient *in any proceeding in which he relies upon the condition as an element of his claim or defense ....*" (Emphasis added.) Here, Santistevan's defense was based, in part, on his mental condition. Therefore, his communications to Dr. Engle were not within the privilege. Rule 503(d)(2) also specifies that "[i]f the court orders an examination of the physical, mental or emotional condition of a patient, whether a party or a witness, communications made in the course thereof are not privileged under this rule with respect to the particular purpose for which the examination is ordered unless the court orders otherwise." Here, the district court did order some limitations on the prosecution's use of Santistevan's statements to Dr. Engle, but it is not contended that these restrictions were violated. Lastly, Rule 503(a)(4) states: "A communication is 'confidential' if not intended to be disclosed to third persons ...." Santistevan's communications to Dr. Engle, subject to the parameters set by the district court, were not intended to be confidential.

### III.

### CONCLUSION

The district court's order requiring Santistevan to participate in a mental examination by the State's expert did not violate Santistevan's Fifth Amendment privilege against self-incrimination nor his psychotherapist-pa-

4. *But see State v. Gerdau,* 96 Idaho 516, 518, 531 P.2d 1161, 1163 (1975) ("The court has inherent power to order a psychiatric examination when mental condition is in issue.").

5. Rule 503(b)(2) provides:
   Criminal Action. A patient has a privilege in a criminal action to refuse to disclose and to prevent any other person from disclosing con-

fidential communications made for the purpose of diagnosis or treatment of the patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family.

tient privilege. The judgment of conviction is therefore affirmed.

Chief Judge PERRY and Judge GUTIERREZ concur.

