No. 02-055

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 83

| | | |
|---|---|---|
| THE GOLDMAN SACHS GROUP, INC., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | O P I N I O N |
| | ) | AND |
| v. | ) | O R D E R |
| | ) | |
| MONTANA SECOND JUDICIAL DISTRICT | ) | |
| COURT, BUTTE-SILVER BOW COUNTY, | ) | |
| HONORABLE THOMAS M. MCKITTRICK, | ) | |
| DISTRICT JUDGE, | ) | |
| | ) | |
| Respondent. | ) | |

¶1    The Goldman Sachs Group, Inc. (Goldman Sachs), has filed an application for writ of supervisory control alleging that the Second Judicial District Court's order denying its motion for substitution of judge was an erroneous interpretation of § 3-1-804, MCA, and, therefore, the District Court is proceeding under a mistake of law.  Co-defendants in the underlying District Court cause, Montana Power Company (MPC) and MPC Outside Directors, have filed briefs in support of Goldman Sachs' right of substitution.  Plaintiffs in the underlying District Court cause have filed a brief in opposition to substitution.  None of the parties dispute that this an extraordinary case warranting an exercise of supervisory control under Rule 17(a), M.R.App.P.  However, they do dispute the District Court's interpretation of § 3-1-804, MCA, governing the substitution of district court judges.

1

¶2 Plaintiffs in the District Court action filed their original Complaint on August 16, 2001. In this original complaint, Plaintiffs named several Defendants and John Does 1-2, but not Goldman Sachs. Only Defendant PPL Montana (PPLM) was served with the original Complaint, and on September 4, 2001, it entered its first appearance. Plaintiffs filed their Amended Complaint on September 14, 2001, substituting Goldman Sachs for one of the advisor John Does. Soon thereafter, on September 21, 2001, PPLM moved for substitution of District Court Judge Krueger. Approximately one month later, on October 22, 2001, Defendant MPC and all individual MPC Defendants acknowledged service and receipt of the Amended Complaint. Judge McKittrick assumed jurisdiction of this action on October 26, 2001.

¶3 Plaintiffs did not serve Goldman Sachs with the Amended Complaint until September 28, 2001, or approximately one week after PPLM moved for substitution of the first judge assigned in this action. Goldman Sachs acknowledged service and receipt of the Amended Complaint on November 16, 2001. Seven days later, on November 23, 2001, Goldman Sachs moved to substitute Judge McKittrick.

¶4 The District Court denied Goldman Sachs' motion to substitute. It held that since Goldman Sachs failed to show that hostility existed between it and the other Defendants, it could not substitute the district court judge under § 3-1-804(1), MCA. The District Court noted that the Defendants, rather than being

2

hostile, had engaged in coordinated efforts thus far in the litigation.

¶5 The District Court also held that Goldman Sachs' motion was untimely under § 3-1-804(1)(c), MCA. It calculated that the latest date for any of the original parties to exercise their right of substitution was November 21, 2001, or 30 days after the date on which all of the original Defendants had acknowledged service. The court reasoned that Goldman Sachs was not an original party because it was not named in the original Complaint, and, thus, it had no right of substitution under § 3-1-804(1)(c), MCA. In any event, the court concluded that had Goldman Sachs been an original party, its motion to substitute filed on November 23, 2001, was untimely.

¶6 We will assume supervisory control over a district court, as authorized by Article VII, Section 2(2) of the Montana Constitution and Rule 17(a), M.R.App.P., to control the course of litigation where the district court is proceeding under a mistake of law, and in so doing is causing significant injustice, and where the remedy by appeal is inadequate. Our determination of whether supervisory control is appropriate is a case-by-case decision, based on the presence of extraordinary circumstances and a particular need to prevent an injustice from occurring. *Park v. Montana Sixth Jud. Dist. Court*, 1998 MT 164, ¶ 13, 289 Mont. 367, ¶ 13, 961 P.2d 1267, ¶ 13 (citing *Plumb v. Fourth Jud. Dist. Court* (1996), 279 Mont. 363, 368, 369, 927 P.2d 1011, 1014-15; *Mazurek v. District Court* (1996), 277 Mont. 349, 352-53, 922 P.2d 474, 476-77).

3

¶7    Having reviewed the briefs submitted in support of and in opposition to the Goldman Sachs' application, we conclude this is an extraordinary case and supervisory control is proper. The case presents the purely legal issue of whether the District Court properly interpreted § 3-1-804, MCA, to require a defendant to demonstrate its "adversity" to another defendant which had already exercised its right of substitution in order to invoke an independent right of substitution. This is an issue of both first impression and statewide importance. In addition, the legal question of timeliness under § 3-1-804(1)(c), MCA, is presented.

¶8    Additionally, and most importantly, the substitution of judge issue presented here occurs in the context of pending litigation which is potentially complex and which involves numerous parties. Requiring litigation of the matter as it stands now risks wasting significant resources and may cause uncertainty as to the validity of the District Court judge's involvement and decisions in this matter.  Under these circumstances, due appeal of the issue following final judgment would come too late.  Accordingly, the Court will exercise its authority under Rule 17(a), M.R.App.P., and issue an appropriate order addressing the issues presented.

¶9    Having determined that this is a proper case for supervisory control, we turn to the issue of whether substitution is appropriate in this case.  A motion for substitution of a district court judge may be made by any party to a proceeding only in the manner provided for in § 3-1-804, MCA.  "[E]ach adverse party, including the state, is entitled to one substitution of a district

4

judge." At issue here is what constitutes "each adverse party" for purposes of the statute. Simply stated, in cases involving multiple defendants, must a defendant be adverse only to the plaintiff or also to the other defendants?

¶10 Goldman Sachs maintains that its adversity to the Plaintiffs is sufficient to invoke its right of substitution under § 3-1-804, MCA. It claims that, under the plain language of § 3-1-804, MCA, Goldman Sachs and PPLM are "each" an "adverse party" with independent rights of substitution. As such, Goldman Sachs insists that it need not demonstrate that its interests are adverse to PPLM's interests in order to substitute Judge McKittrick.

¶11 Goldman Sachs' reasoning flows from the language of § 3-1-804(1)(c), MCA. It argues that this provision expressly contemplates multiple defendants making separate motions for substitution:

> When a judge is assigned to a cause for 30 consecutive days after service of a summons . . . and no motion for substitution of judge has been filed within said time period, the plaintiff . . . and the party upon whom service has been made shall no longer have a right of substitution. Any party named in a summons who is subsequently served shall have 30 consecutive days after such service in which to move for a substitution of judge.

¶12 Focusing on the language "any party . . . subsequently served," Goldman Sachs argues that the right of substitution is not restricted to only those subsequently served defendants which are adverse to other defendants or those previously served. It faults the District Court's interpretation of § 3-1-804, MCA, for creating "not a right but a race," since a defendant served before another defendant can exercise its right of substitution and, at the

5

same time, preclude subsequently served defendants from exercising their right of substitution. In any event, Goldman Sachs argues that, on the face of the allegations contained in the Amended Complaint, there is certainly the potential for "hostility" among the Defendants in this case.

¶13 Plaintiffs disagree. They contend that the plain statutory language of § 3-1-804(1), MCA, does not permit a right of substitution for "each party." Rather, it limits substitution to "each adverse party." Plaintiffs claim that adopting Goldman Sachs' interpretation would absurdly entitle each defendant, no matter how many, to a right of substitution. In analogizing the substitution of a judge to peremptory juror challenges in criminal cases, Plaintiffs reason that since multiple defendants must demonstrate hostility in order to obtain multiple peremptory challenges, it is reasonable to expect that multiple defendants demonstrate adversity in order to obtain multiple substitutions of district court judges. Plaintiffs insist that, based upon the coordinated efforts of the Defendants in this matter thus far as well as the allegations contained in the Amended Complaint, Goldman Sachs cannot demonstrate adversity and is not entitled to a right of substitution.

¶14 We have not previously interpreted the term "each adverse party" as set forth in § 3-1-804(1), MCA. We conclude that, in order to invoke the right of substitution in cases involving multiple parties, § 3-1-804, MCA, requires the moving party to demonstrate adversity with a co-party to the action which has

6

already exercised its right of substitution. To conclude otherwise based upon subsection (c) language referring to the right of "any party" to substitute a judge would effectively nullify the adversity requirement set forth in subsection (1) of § 3-1-804, MCA. We conclude that the requirement of adversity found in § 3-1-804(1), MCA, must be satisfied before reaching the classification and timeliness requirements set forth in § 3-1-804(1)(c), MCA.

¶15  While we share Goldman Sachs' concern that this interpretation could result in gamesmanship on the part of a plaintiff who does not serve a co-defendant until after a separate co-defendant has exercised the right of substitution, we are equally if not more concerned at the prospect of having 4 or 14 or more defendants each exercising substitution rights without demonstrating adversity. We do not construe § 3-1-804, MCA, to permit an endless string of substitutions.

¶16  Nor do we construe § 3-1-804, MCA, to require a showing of "hostility," as in the criminal jury selection context. By the time a case has made its way to jury selection in a criminal case, all co-defendants have been made part of the case, all pleadings have been filed, facts have been developed and the court can readily ascertain whether hostility exists among co-defendants. In contrast, the substitution of a district court judge occurs at the earliest stages of litigation. By necessity, therefore, any determination of adversity among defendants must be made based on the allegations set forth in the complaint. This is in accord with other early-stage determinations, such as motions to dismiss, which

give the benefit of the doubt to the pleadings. Under this rule, adoption of co-parties' Rule 12, M.R.Civ.P., arguments at the outset of litigation is irrelevant to a party's right of a substitution.

¶17 In sum, we hold that, in order to invoke the right of substitution in cases involving multiple parties under § 3-1-804, MCA, the moving party must demonstrate adversity with a co-party to the action which has already exercised its right of substitution. The determination of adversity is based solely on the allegations set forth in the complaint.

¶18 Here, the Amended Complaint does not demonstrate adversity between Goldman Sachs and PPLM. It simply alleges all of the Defendants were privy to and part of a strategy to transfer MPC assets without shareholder approval. Moreover, Plaintiffs allege that Goldman Sachs breached the same fiduciary duties as the MPC directors and that it "aided and abetted" the directors. We conclude that these allegations do not demonstrate adversity. Rather, they indicate that Plaintiffs "lump" all Defendants together for purposes of culpability.

¶19 As the dissent points out, under our interpretation, if a co-party who is not adverse to you has filed a substitution of judge, that preempts your opportunity to file a substitution. Under that scenario the judge in question is substituted at the behest of a non-adverse party and a new judge, chosen not by any party, but by the first judge, is assigned to the case. Contrary to the dissent's characterization, we fail to see how this process "tilts the playing field" or creates a windfall for anyone involved.

8

¶20 Having concluded that Goldman Sachs did not have the right of substitution under § 3-1-804, MCA, we need not address whether its substitution motion was timely. We do, however, point out that our decision in *Sooy v. Petrolane Steel Gas, Inc.* (1985), 218 Mont. 418, 708 P.2d 1014, is dispositive. Here, Goldman Sachs was a fictitious defendant whose true name was later discovered and substituted by amendment. Based on *Sooy*, Goldman Sachs is considered a party to this action from its commencement. As an original party subsequently served, Goldman Sachs had 30 consecutive days after service in which to move for a substitution of judge under § 3-1-804(1)(c), MCA. Goldman Sachs acknowledged service on November 16, 2001, and it filed its motion for substitution on November 23, 2001, well within the 30-day requirement.

¶21 We conclude that the District Court properly interpreted § 3-1-804, MCA, to require adversity among co-defendants in order to exercise the right of substitution, and that the District Court, although using the term "hostility," properly held that no adversity existed between the co-defendants in this case. We thus affirm the District Court's denial of Goldman Sachs' motion to substitute judge.

¶22 THEREFORE IT IS HEREBY ORDERED:

¶23 Goldman Sachs' application for a writ of supervisory control is DENIED.

¶24 The Clerk is directed to mail a copy of this order to Plaintiffs' and Defendants' counsel, to the Honorable Thomas M.

9

McKittrick, District Judge, and to the Clerk of the District Court of Butte-Silver Bow County.

DATED this 2nd day of May, 2002.


/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER
/S/ JIM REGNIER

Justice Patricia O. Cotter specially concurs.

¶25 I concur in the result reached by the Court, but offer additional, and simpler, grounds for my belief that the Court has reached the correct decision.

¶26 Section 3-1-804(1)(c), MCA, begins by addressing the situation where a district judge is "assigned to a cause for 30 consecutive days after service of a summons . . . , and no motion for substitution of judge has been filed within said time period . . . ." The first sentence of this paragraph provides that in such a circumstance, and after the 30 days expires, the plaintiff and the party served with the summons will no longer have the right of substitution. The next sentence in the paragraph sets forth the rights of those subsequently served to move for a substitution of judge. It is this second sentence in § 3-1-804(1)(c), MCA, regarding the rights of the subsequently served, upon which Goldman Sachs relies for its position.

¶27 I maintain that placement of this contested language in the middle of the paragraph addressing what can occur when neither the original plaintiff nor the originally served defendant have moved for substitution, is significant. It is the party who is "subsequently served" who has the right to move for substitution. To make any sense of § 3-1-804(1)(c), MCA, as a whole, the term "subsequently served" must refer back to the situation already described in the first sentence of the paragraph. In other words, once neither the original party nor the initially served defendants have timely moved for substitution, they lose that right, and a

11

party "subsequently served" then has the opportunity to move for substitution. ¶28 Here, an originally served defendant, PPLM, did timely move for substitution. Once this occurred, the "subsequently served" party no longer had the right to seek substitution under § 3-1-804(1)(c), MCA.

¶29 This interpretation of the statute is inherently consistent with the general statement contained at § 3-1-804(1), MCA, that each adverse party is entitled to one substitution of judge, as a "subsequently served" defendant may only move for substitution if a previously served defendant has not done so. If one accepts this interpretation, it is not necessary to engage in the construction of the term "adverse party, " as the District Court did, and as the majority and dissent do here.

/S/ PATRICIA COTTER

12

Justice James C. Nelson concurs and dissents.

¶25 I concur in part of our order and dissent in part. While I would not find a need to define "hostility" for purposes of interpreting § 3-1-804, MCA--the word is not even included in the statute--nevertheless, for the reasons set out by the majority, I agree that the rules for determining hostility in the context of jury selection have no place in resolving the matter at issue. Similarly, and for the same reasons articulated by the majority, I agree with the Court's conclusion that Goldman Sachs's motion for substitution was timely filed.

¶26 I dissent from that part of the majority's order determining that adversity amongst co-parties is required in addition to adversity between plaintiffs and defendants. I conclude that the phrase "each adverse party" as set out in § 3-1-804(1), MCA, does not include the requirement that co-parties be adverse.

¶27 The cardinal rule of statutory construction requires that we simply declare what is in terms or in substance contained in the statute, neither inserting what has been omitted nor omitting what has been inserted. Section 1-2-101, MCA. We must construe the statute according to the plain meaning of the words used, and if the language is clear and unambiguous, then no further interpretation is necessary. *Sherner v. Conoco, Inc.*, 2000 MT 50, ¶ 35, 298 Mont. 401, ¶ 35, 995 P.2d 990, ¶ 35 (citations omitted).

¶28 Assuming the other requirements of the statute are met, § 3-1-804(1), MCA, allows "each adverse party" to peremptorily substitute

13

the presiding judge once. The statute does not require that each defendant (or plaintiff) or that all defendants (or plaintiffs) collectively possess this right of substitution. Rather, the plain and unambiguous language of the statute gives "each adverse party" a right of substitution.

¶29 The majority offer no definition of "adverse party." While we have not defined this phrase in the context of § 3-1-804, MCA, we have defined what an "adverse party" is for purposes of appeal. We have stated that "[a]n 'adverse party' upon whom a notice of appeal is required to be served is one whose rights may be injuriously affected by a reversal or modification of the judgment from which the appeal is taken." *Reardon v. Gilligan* (1949), 122 Mont. 295, 299-300, 202 P.2d 242, 244 (citations omitted). *See also Central Mont. Stockyards v. Fraser* (1957), 133 Mont. 168, 180, 320 P.2d 981, 988 ("an 'adverse party'. . . is a party who has an interest in opposition to the object sought to be accomplished by the appeal, or a party whose rights may be adversely affected by the reversal or modification of the judgment"). *Accord In re Estate of Stoian* (1960), 138 Mont. 384, 392, 357 P.2d 41, 46 (citations omitted).

¶30 Since this was the only jurisprudential definition of "adverse party" on the books when the 1987 Court drafted and adopted what is now § 3-1-804, MCA, it is logical that the Court had this definition in mind when it included the phrase in the rule. That is, an "adverse party" is one who is entitled to appeal an adverse judgment. Certainly Goldman Sachs fits within this definition of

14

"adverse party."  Undisputedly, it is a party who has an interest in opposition to the object sought in the litigation and, thus, is a party whose rights may be adversely affected by reversal or modification of an adverse judgment.  Goldman Sachs is an "adverse party" as we have defined that phrase in our case law and there is no good reason why it is not an "adverse party" for purposes of exercising substitution rights under § 3-1-804(1), MCA.

¶31  Whether Goldman Sachs is adverse to one or another defendant is beside the point.  It is undisputed that Goldman Sachs is adverse to the plaintiffs; that it is a party to this litigation; and that it will ultimately be entitled to appeal an adverse judgment against it.  That is all the  plain language of § 3-1-804, MCA, requires, nothing more.

¶32  The majority's reading into the statute the requirement of adversity between co-parties violates the rules of construction aforementioned.  The Court has inserted a phrase--"each adverse party *(meaning co-parties collectively to the extent they are not adverse)*"-- which is omitted from the unambiguous statute.  The Court has ignored the plain language of the words used--"each adverse party"--as we have previously defined those in our case law.  And the Court has constructed this judicial re-write from whole cloth without citation to any authority whatsoever.

¶33 Moreover, while § 3-1-804, MCA, clearly contemplates and provides for lawsuits with multiple parties, there is not one suggestion in the plain language of the statute that co-party adversity is a prerequisite for substitution in cases involving

15

more than one defendant or, presumably, plaintiff. Certainly, if such was the requirement when this Court drafted and adopted this statute in 1987 or when we subsequently amended it, appropriate language could have been included. More to the point, if this Court now intends that the requirement of co-party adversity be included in the statute, then the appropriate mechanism is to amend the rule pursuant to our authority under Article VII, Section 2(3) of the Montana Constitution; publish the amendment providing for an effective date; and then go on from there with the new requirement in place. Jerking the rug out from under parties in a pending lawsuit violates basic fairness, if not due process.

¶34 Furthermore, as Goldman Sachs argues, inserting into the statute a requirement for co-party adversity makes the exercise of the right of substitution not a right, but a race. In a multiple-defendant case, absent proof of co-party adversity, the first defendant to exercise its right of substitution under § 3-1-804, MCA, precludes any other defendant from exercising that right, even though defendant number two timely files its motion for substitution in accordance with the provisions of the statute. If the plaintiff serves defendant number two after defendant number one's substitution, defendant number two is out of luck, even though it exercised its first opportunity under the statute to substitute the judge.

¶35 Obviously, the opportunities for gamesmanship in service of process and in use of the fictitious name statute, § 25-5-103, MCA, abound. Under our new co-party adversity rule, a plaintiff can

16

prevent a defendant from exercising its substitution right by merely filing a complaint against a named defendant and a John Doe; by effecting service on the named defendant immediately; and by then waiting 30 days to amend the first complaint and to substitute the named party for the John Doe. This may be a windfall for the plaintiff's bar, but tilting the playing field is not supposed to be what our procedural rules are about. *See Haugen v. Blaine Bank* (1996), 279 Mont. 1, 12-13, 926 P.2d 1364, 1370-71 (Nelson, J., concurring).

¶36 Finally, I will also note that district court judges frequently complain that substitutions under § 3-1-804, MCA, are too easy and create problems for the substituted judge in finding another jurist to take his or her place, not to mention the travel and disruption of business in two courts that substitution often involves. It appears that we have now ameliorated that problem to some extent. On the other hand, many members of the practicing bar view their right of substitution as being an important, if not sacred, opportunity to assure their client's right to a fair trial. Our decision here diminishes that right substantially.

¶37 For all of the foregoing reasons, I dissent from our insertion of a co-party adversity rule into the otherwise plain and unambiguous language of § 3-1-804, MCA. I would reverse the trial court's decision.

/S/ JAMES C. NELSON

17