No. 01-676

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 201

MERLIN MYERS REVOCABLE TRUST

        Petitioner/Respondent,

  v.

YELLOWSTONE COUNTY and
YELLOWSTONE COUNTY
COMMISSIONERS,

        Respondents/Appellants.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                        In and for the County of Yellowstone,
                        The Honorable Russell C. Fagg, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:
                Mark A. English, Deputy Yellowstone County Attorney, Billings, Montana

        For Respondent:
                James P. Murphy, Bruce F. Fain, Murphy, Kirkpatrick & Fain, Billings,
        Montana

        For Amicus:
                Jeffery T. Renz, Clinton, Montana (Hillside Village Mobile Home Park)

                        Submitted on Briefs: February 21, 2002

                        Decided:  September 5, 2002

Filed:

_____
                        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Yellowstone County and the Yellowstone County Commissioners appeal the District Court's ruling reversing the County's denial of an application for Special Review filed by the Merlin Myers Revocable Trust. We affirm.

## ISSUES

¶2     Did the District Court err when it determined that the Montana Code Annotated does not allow a county to deny a special review to mine gravel with an open cut mine in a nonresidential area within its jurisdictional zoning area?

¶3     Did the District Court err when it determined the Yellowstone County Commissioners' decision to deny the Trust's Special Review violated Montana's Separation of Powers Doctrine?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     The parties stipulated to the facts to be considered by the District Court in this case. Only the facts relevant to an understanding of this Court's ruling are recited below.

¶5     The Merlin Myers Revocable Trust (the Trust) owns property (Property) located in an area of Yellowstone County that is zoned Agricultural-Open Space (AO). The Property is bordered by a mobile home park, a school, a public park and State land. Access to the Property is by way of an easement through the school's property.

¶6     Myers desired to mine and process gravel on the Property and, in July 2000, he filed an application for Special Review with the Board of Yellowstone County Commissioners (County Commissioners or Commissioners). It is only through the granting of such a Special Review by the County Commissioners that gravel mining and processing can be performed. The City of Billings-Yellowstone County Planning Department issued a report in August 2000, recommending approval of the Special Review Application with various operational

2

conditions. The report advised that, under Montana law, the County could not prohibit a gravel operation on property zoned AO but that it could impose reasonable conditions on such an operation. The Planning Department based this legal opinion on a memorandum composed in 1996 by the then-Acting Deputy Yellowstone County Attorney.

¶7 The Yellowstone County Zoning Commission reviewed the Planning Department's recommendation report on the same day it was issued but was unable to reach a consensus. Therefore, it sent the matter to the County Commissioners without a recommendation. Immediately after the Zoning Commission failed to reach a consensus, the Acting Director of the Zoning Staff sought another legal opinion on the issue from the Deputy Yellowstone County Attorney. The Deputy County Attorney concurred with the earlier opinion that the County may not deny Special Review of a gravel operation on non-residential property.

¶8 In September and October 2000, the County Commissioners held two public hearings on the application for Special Review. On the evening prior to the October hearing, Myers and representatives from the school and the mobile home community reached a consensus on agreeable conditions that could be imposed on the gravel operations. The County Commissioners listened to a verbal recitation of the terms of the settlement agreement the following day at the public hearing, but then denied the application. In their written decision the Commissioners stated that permitting the application would "violate the Montana Constitutional rights of students at [a neighboring school] to a clean, healthful and safe environment."

¶9 In November 2000, the Trust filed a timely request for judicial review of the decision to deny Special Review of its application. In May 2001, the District Court ordered that the June 4, 2001 scheduled trial date be used for oral argument to address the question of whether the County Commissioners violated Montana statutes and the Separation of Powers Doctrine, and further

3

ordered that all other issues be deferred until a later date.

¶10    Following argument, the District Court concluded that Yellowstone County and its Commissioners did not have the authority under the applicable Montana statutes to deny the Special Review. The court further concluded that the County Commissioners had violated Montana's Separation of Powers Doctrine with its denial of the Special Review. On June 14, 2001, the District Court reversed and remanded the matter to the County Commissioners with instructions to grant the Special Review and determine what, if any, reasonable conditions should be placed on the Trust's gravel operation.

¶11    Yellowstone County and the County Commissioners filed a timely appeal.

## STANDARD OF REVIEW

¶12    The District Court was not called upon to resolve any factual disputes in this matter. It was required only to draw legal conclusions. This Court reviews a district court's conclusions of law to determine whether its interpretation is correct. *Carbon County v. Union Reserve Coal Co., Inc.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

## DISCUSSION

¶13    The County Commissioners' denial of Special Review of the Trust's application, after several months of consideration and information gathering, was premised exclusively on Article II, Section 3 of the Montana Constitution, i.e., Montanans' fundamental right to a clean and healthful environment. The Commissioners concluded that the gravel operation was not compatible with and would interfere with the surrounding property uses, and would violate the right to a clean and healthful environment as guaranteed by the Montana Constitution to those people who lived and attended school nearby. It was not until the Trust appealed the ruling to the District Court that the County Commissioners presented a statutory justification for their decision for the first time.

4

Relying upon §§ 82-4-431(6) and 82-4-432, MCA, the Commissioners argued that the Trust's gravel operation must comply with the local zoning regulations requiring a consideration of the community's health, safety and welfare, and that under these Title 82 statutes, the County Commissioners have the authority to deny a special review to mine gravel with an open cut mine in a nonresidential area within its jurisdictional zoning area.

¶14    The Trust argued to the District Court that under §§ 76-1-113 and 76-2-209, MCA, local planning boards may not prevent the operation of a gravel facility in a nonresidential area. It further argued that the statutes are clear, unambiguous, and directly applicable to this facility which is located on nonresidential property. Significantly, the County Commissioners do not dispute that the denial of the application was contrary to the provisions of § 76-2-209, MCA. However, the Commissioners maintain that the Title 82 statutes support their position.

¶15    The District Court analyzed the statutes relied upon by both parties and concluded that the Trust accurately construed the statutes upon which it relied and that the County Commissioners misconstrued the statutes upon which they relied. The District Court held that the language of §§ 76-1-113 and 76-2-209, MCA, set forth below, is clear and unambiguous.

> **Section 76-1-113.  Effect of chapter on natural resources.**
> (1) Except as provided in subsection (2), nothing in this chapter may be considered to authorize an ordinance, resolution, or rule that would prevent the complete use, development, or recovery of any mineral, forest, or agricultural resources by the owner thereof.
> (2) The complete use, development, or recovery of a mineral by an operation that mines sand and gravel and an operation that mixes concrete or batches asphalt on a site that is located within a geographic area zoned as residential are subject to the zoning regulations adopted under Title 76, chapter 2.
>
> **Section 76-2-209.  Effect on natural resources.**
> (1) Except as provided in 82-4-431 and 82-4-432, a resolution or rule adopted pursuant to the provisions of this part, except 76-2-206, may not prevent the complete use, development, or recovery of any mineral, forest, or agricultural resources by the owner thereof.

5

(2) The complete use, development, or recovery of a mineral by an operation that mines sand and gravel and an operation that mixes concrete or batches asphalt on a site that is located within a geographic area zoned as residential are subject to the zoning regulations adopted under this chapter.

¶16    The District Court  interpreted this language to mean, "Sand and gravel mining within residential areas is subject to local zoning regulations.  Sand and gravel mining within non-residential areas is not."

¶17    The District Court further held that the plain language of §§ 82-4-431 and 82-4-432, MCA, supported, rather than negated, this conclusion.  The general purpose of § 82-4-431, MCA, is to require an operator of an open cut mining operation to obtain a reclamation permit before conducting mining operations.  Subsection 6 of this statutory provision simply states, "Sand and gravel open cut mines must meet applicable local zoning regulations adopted under Title 76, chapter 2."  Section 82-4-432, MCA, lists the required open cut mining permit application contents.  A required application attachment is a statement from the local governing body that the proposed mining operation complies with the zoning regulations adopted under Title 76, chapter 2.

¶18    The County Commissioners had interpreted the Title 82 statutes to create exceptions to the general rule that a zoning regulation cannot prevent the complete recovery of mineral resources. The District Court, reading the plain language of the statutes, concluded that under §§ 82-4-431(6) and 82-4-432, MCA, gravel open cut mines must meet applicable local zoning regulations as adopted under Title 76, chapter 2.  Reading Title 76, chapter 2, the District Court further concluded that only residential areas are subject to local zoning regulations.  Section 76-2-209(2), MCA.  It is from this ruling that Yellowstone County and its Commissioners appeal, arguing that the District Court erred.

¶19    The fundamental rule in statutory construction is to determine the legislative intent of the

6

statute. Section 1-2-102, MCA. The first step in making this determination is to look at the plain language of the statute. If it is clear and unambiguous, no further interpretation is necessary. *Goldman Sachs v. Mont. Second Dist. Court*, 2002 MT 83, 309 Mont. 289, 46 P.3d 606 (citations omitted). Moreover, when several statutes apply to a situation, the statutes should be construed, if possible, in a manner which will give effect to each of them. Section 1-2-101, MCA. This is the precise exercise the District Court undertook. We conclude the court correctly interpreted the law, and affirm the District Court's ruling on this issue.

¶20 The District Court further concluded that the "[c]ommissioners ruled as if § 76-2-209, MCA, was either unconstitutional or did not exist," and that this action violated the separation of powers doctrine of the Montana Constitution. The County Commissioners protest to this Court that they did not find the statute unconstitutional, but that they acted instead under statutory authority, and therefore no separation of powers issue exists. We disagree. Our review of the record shows that the County Commissioners consistently maintained that § 76-2-209, MCA, conflicted with the Montana Constitution and that, as a result, they were compelled to follow the Constitution.

¶21 The District Court determined that whether the Commissioners intended to or not, they essentially construed § 76-2-209, MCA, to deny neighboring residents a clean and healthful environment in violation of the Montana Constitution. The District Court explained in its order that each branch of the government has well-defined powers that are exclusive to that branch--the legislative branch makes the laws, the executive branch carries out the laws, and the judicial branch construes and interprets the laws. It is the exclusive power of the courts to determine if an act of the legislature is unconstitutional. *In re License Revocation of Gildersleeve* (1997), 283 Mont. 479, 484, 942 P.2d 705, 708. Moreover, the laws enacted by the legislators are presumed constitutional unless proven otherwise beyond a reasonable doubt. *Zempel v. Uninsured Employers' Fund* (1997),

7

282 Mont. 424, 428, 938 P.2d 658, 661.

¶22    The District Court held that as an arm of the executive branch, the County Commissioners were required to faithfully execute the laws of Montana and that they failed to do so. Instead, the Commissioners refused to comply with the provisions of § 76-2-209, MCA, stating that it was in conflict with the Montana Constitution. The District Court concluded that this action, exclusively reserved for the judicial branch, was a violation of the Separation of Powers Doctrine of the Montana Constitution. For the reasons expressed by the District Court, we agree.

¶23    The County Commissioners also argue that they asked the District Court to determine whether § 76-2-209(2), MCA, violated Article II, Section 3 of the Montana Constitution and, if so, whether the Commissioners have some authority under the Montana Constitution to deny the Special Review because of health and safety concerns associated with the unique location of a proposed mine in such close proximity to school property. The County Commissioners maintain it was error for the District Court to fail to address these issues. We disagree.

¶24    This Court has repeatedly recognized that courts should avoid constitutional issues whenever possible. *State v. Still* (1995), 273 Mont. 261, 263, 902 P.2d 546, 548 (citations omitted). We have held that "[c]ertain constraints govern the Court's power to determine the constitutionality of statutes. Among those constraints is the principle that we will not rule on the constitutionality of a legislative act if we are able to decide the case without reaching constitutional considerations." *Still*, 273 Mont. at 263, 902 P.2d at 548 (citations omitted). The County Commissioners conceded the soundness of this principle in their Post-Oral Argument Brief. The District Court correctly and appropriately resolved the dispute between the parties in this case on a statutory basis, and without addressing constitutional issues. The District Court did not err in doing so.

¶25    While this Court appreciates the difficult job with which county commissions are faced on a

8

daily basis, and we particularly appreciate this Commission's desire to protect the environment and safety of the residents in the area of this proposed facility, it is, nonetheless, not the County Commissioners' function to ignore the plain provisions of a duly enacted statute.

## CONCLUSION

¶26     The County Commissioners are not left powerless to protect the health and safety of the residents who live and attend school near the Property by virtue of this Opinion.  They retain the authority to impose reasonable conditions upon approval of the application for Special Review. Accordingly, we affirm and remand for proceedings consistent with the District Court's Order.

/S/ PATRICIA COTTER

We Concur:

/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ JAMES C. NELSON

Justice James C. Nelson specially concurs.

¶27 In default of the County's failure to effectively develop its Article II, Section 3 (fundamental right to a clean and healthful environment) argument in these proceedings, I am left with no other alternative but to concur in the statutory analysis of our Opinion.

¶28 In doing so, however, I do not concede that, statute or no statute, a governmental entity can act in a fashion so as to permit or require infringement of the environmental interests protected under Article II, Section 3 and Article IX, Section 1, of the Constitution of Montana. *See MEIC v. Department of Envtl. Quality*, 1999 MT 248, 296 Mont. 207, 988 P.2d 1236; *Cape-France Enter. v. Estate of Peed*, 2001 MT 139, ¶¶ 30-37, 305 Mont. 513, ¶¶ 30-37, 29 P.3d 1011, ¶¶ 30-37.

¶29 If, indeed, the neighborhood school students' fundamental rights to a clean and healthful environment were put at risk because of the operation of § 76-2-209, MCA, (and that is what, in my view, the County Commissioners effectively determined) then the Board should have brought its constitutional challenge in the District Court at the outset.

¶30 With the foregoing caveat, I concur.

/S/ JAMES C. NELSON