FILED

November 25 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0022

DA 14-0022

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2014 MT 311

CITY OF HELENA, a Municipal Corporation,

        Plaintiff, Counter-Respondent, Appellant,
        and Cross-Appellee,

    v.

SCOTT SVEE and MEGAN SVEE,

        Defendant, Counter-Petitioner, Appellee, and
        Cross-Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                    In and For the County of Lewis and Clark, Cause No. CDV-2011-1106
                    Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Jeffrey M. Hindoien, Thomas J. Jodoin; Office of the City Attorney;
                Helena, Montana

        For Appellee:

                Robert M. Murdo; John M. Semmens; Jackson, Murdo & Grant, P.C.;
                Helena, Montana

                          Submitted on Briefs:  September 10, 2014
                                    Decided:  November 25, 2015

Filed:

                               _____
                                     Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 The City of Helena (City) appeals from the Judgment of the First Judicial Court, Lewis & Clark County, denying its cross-motion for summary judgment and concluding as a matter of law that it had no legal authority to adopt or enforce Helena City Code § 11-42-2. Scott Svee and Megan Svee (Svees) cross-appeal from the Judgment for dismissing their constitutional claims and denying their claim for attorney's fees. We affirm in part, and reverse and remand in part, and restate the issues as follows:

*1. Did the District Court err by determining that Helena City Code § 11-42-2 was an impermissible building code, and not a zoning ordinance?*

*2 Did the District Court err by holding that the Svees were ineligible for an award of attorney fees under § 27-8-313, MCA?*

*3. Did the District Court err by failing to address and dismissing the Svees's constitutional arguments?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 In January 2009, the Helena City Commission adopted an amendment to its existing zoning ordinance, § 11-41-1 of the Helena City Code, which created a wildland-urban interface district (WUI district) encompassing the corporate limits of the city of Helena and overlaying the City's other zoning districts. As part thereof, the City also adopted § 11-41-2, which provides, in pertinent part, as follows:

A.  Structures located within the wildland-urban interface district may not have exposed, wooden roofing materials, whether treated or untreated, and must have noncombustible or fire resistant roofing materials that are rated Class C or higher in accordance with ANSI/UL 790 or ASTM E 108 or any equivalent test.

3

> B.    Existing roofs that undergo renovation, alteration, or repairs that involve more than ten percent (10%) of the square footage of the affected roof plane must meet the requirements of this chapter. If the renovation, alteration, or repair involves more than fifty percent (50%) of the square footage of the area of the entire roof, then the entire roof must comply with the requirements of this chapter.

Helena, Mont., City Code § 11-41-2. The challenge in this case is made only to § 11-41-2, and the limitations it places on roofing materials, not to the creation of the WUI district itself.

¶3    The Svees are homeowners whose property is situated within the WUI zoning district. After receiving notice that their homeowners insurance policy would be canceled due to the condition of their roof, the Svees, due to personal financial constraints, limited repairs to the portion of the roof most in need of improvement, replacing old wooden shingles on the south plane of the roof with new wooden shingles. The project began on August 12, 2011.

¶4    On August 15, 2011, a city building official observed the Svees' repair project and issued a stop-work notice. By the time the Svees received the notice, they had finished the roof repair. The City filed criminal complaints against the Svees for re-roofing without a permit, serving them on September 8, 2011. Then, on November 7, 2011, the Helena City Commission voted to file a civil action against the Svees in addition to pursuing criminal charges. On December 6, 2011, the City filed a six-count complaint against the Svees in the First Judicial District Court, alleging failure to obtain a building permit; violation of the International Residential Code by failing to obtain a building permit; violation of the International Residential Code by installing new roof covering

4

over an existing roof covering; violation of the International Residential code by using excess applications of roof covering; violation of Helena City Code by using illegal roofing materials; and public nuisance. The Svees answered the civil complaint in January 2012 and petitioned the District Court for a declaratory judgment that the Ordinance was invalid on statutory and constitutional grounds. On February 13, 2012, the criminal charges were dismissed on the motion of the City.

¶5 Svees moved for summary judgment on their Petition for Declaratory Judgment and the City countered by moving for summary judgment while simultaneously withdrawing five of the counts alleged in its complaint, leaving only the count alleging violation of the Ordinance. The parties agreed that there were no genuine issues of material fact, and that the validity of § 11-41-2 was a question of law. Based on a statutory analysis, the District Court denied the City's motion and granted the Svees', reasoning:

> [W]hen the plain language of the statutes are applied in conjunction with one another, the Court concludes that the logical conclusion is that § 11-41-2 is a building regulation, i.e., an ordinance relating to the design, construction, alternation, or repair of buildings, and the materials to be used therefor . . . . The statute does not authorize the City to adopt building regulations under the guise of a zoning ordinance.

The court did not address the constitutional claims raised by the Svees.

¶6 On October 25, 2013, the District Court entered a final Judgment, declaring "the Svees' claims seeking a declaration that the City had no legal authority to adopt or enforce Helena City Code § 11-41-2 . . . are GRANTED." On November 5, 2013, the Svees filed a motion requesting attorney fees, which the District Court denied.

Subsequently, the City filed a notice of appeal from the judgment invalidating the Ordinance, and the Svees filed a cross-appeal challenging the dismissal of their constitutional arguments and the denial of attorney fees.

## STANDARD OF REVIEW

¶7    This Court reviews the grant of summary judgment de novo, using the same M. R. Civ. P. 56 criteria used by a district court. *Albert v. City of Billings*, 2012 MT 159, ¶ 15, 365 Mont. 454, 282 P.3d 704.  Summary judgment is appropriate when the moving party demonstrates an absence of any genuine issue of material act and entitlement to judgment as a matter of law.  *Albert*, ¶ 15. When no dispute exists as to the material facts, this Court reviews whether the district court correctly applied the law.  *Kalispell Educ. Ass'n v. Bd. of Trustees*, 2011 MT 154, ¶ 9, 361 Mont. 115, 255 P.3d 199.  A district court's ruling on a summary judgment is not a discretionary function that merits deferential review.  *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 53, 345 Mont. 12, 192 P.3d 186.  This Court reviews for correctness a district court's conclusion regarding the existence of legal authority to award attorney fees.  *Hughes v. Ahlgren*, 2011 MT 189, ¶ 10, 361 Mont. 319, 258 P.3d 439 (citation omitted).  If legal authority exists, we review for an abuse of discretion a district court's order granting or denying attorney fees.  *Hughes*, ¶ 10.

## DISCUSSION

¶8    *1. Did the District Court err by determining that Helena City Code § 11-42-2 was an impermissible building code, and not a zoning ordinance?*

¶9    In 1969, Montana adopted a state building code designed to "provide reasonably uniform standards and requirements for construction and construction materials

6

consistent with accepted standards of design, engineering, and fire prevention practices." Section 50-60-201(1), MCA. Section 50-60-202, MCA, designates the Department of Labor and Industry as "the only state agency that may promulgate building regulations . . . ." The Legislature has authorized counties, cities, and towns to locally adopt and enforce only those building codes that have been "adopted by the department." Sections 50-60-301(2), MCA; 50-60-302(a), MCA. "Building regulations" are defined as "any law, rule, resolution, regulation, ordinance, or code, general or special . . . relating to the design, construction, reconstruction, alteration, conversion, repair, inspection, or use of buildings and installation of equipment in buildings." Section 50-60-101(3)(a), MCA. This definition "does not include zoning ordinances." Section 50-60-101(3)(b), MCA.

¶10 The City interprets the District Court's order as holding that *the creation of the WUI zoning district* was nothing more than the adoption of 'a building regulation[] under the guise of a zoning ordinance,'" (emphasis added), which the City challenges as error. The City argues that the key issue is "whether the WUI zoning overlay district is a valid zoning ordinance under Montana law," and notes that municipalities are authorized, pursuant to their delegated zoning authority, to regulate the height and size of buildings and other structures, § 76-2-301, MCA, as well as "the erection, construction, reconstruction, alteration, repair, or use of buildings." Section 76-2-302, MCA. Positing that its WUI district falls squarely within statutorily authorized municipal zoning, the City then cites the qualification within the definition of "building regulations" in § 50-60-101(3)(b), MCA, as "not includ[ing] zoning ordinances," and reasons that this exclusion

7

eliminates any possible classification of the WUI zoning district as a building code regulation, as well as any conflict with state law.

¶11 The first problem with the City's overbroad argument, as noted by Svees, is that Svees did not challenge and the District Court did not invalidate the entire WUI zoning district as an impermissible building regulation that conflicted with state law. Rather, they challenged and the District Court invalidated only the portion of the WUI ordinance that regulated building construction materials, that being § 11-42-2. While the District Court's decision may have removed the "teeth" of the WUI district as now enacted, the district itself remains valid and the City is not precluded from exploring other mechanisms to secure fire protections in the district. Thus, the City's assertion that it is "absurd" to conclude that the WUI district is not a valid exercise of the City's zoning authority is falsely premised—the District Court did not so hold, and that issue is not before us here. The further flaws in the City's arguments, as discussed below, are that neither the general municipal zoning authority set forth in §§ 76-2-301, -302, MCA, nor the distinguishing of zoning ordinances within the definition of "building regulations" in § 50-60-101(3)(b), MCA, supplant the Legislature's clearly demonstrated intention to occupy this area of the law by enacting a statewide building code and by expressly prohibiting local governments from adopting regulations that deviate from the state code.

¶12 The City emphasizes the language of § 76-2-302, MCA, which authorizes municipalities to "regulate and restrict the erection, construction, reconstruction,

8

alteration, repair, or use of buildings, structures or land."[1]  As the District Court reasoned, on first blush this language appears to support the City's position, but ultimately fails under further analysis.  Section 76-2-302, MCA, clarifies that these powers are granted "[f]or the purposes of 76-2-301," which in turn empowers municipalities to regulate the size, location and use of all structures and land; the size of yards, courts, and other open spaces; and the occupancy on land and density of population.  Section 76-2-301, MCA. This statute neither mentions nor authorizes municipalities to regulate building materials that are expressly governed by the state building code.  The exclusion of zoning ordinances from the definition of "building regulations" in § 50-60-101(3)(b), MCA, simply distinguishes zoning ordinances that properly regulate structures within the sphere of authority provided by § 76-2-301, MCA.

¶13    The City next argues that § 11-41-2 is a valid ordinance under this Court's holding in *Virginia City v. Estate of Olsen*, 2009 MT 3, 348 Mont. 279, 201 P.3d 115.  There, a homeowner challenged building requirements imposed by two building permits issued pursuant to Virginia City's zoning ordinances, including its Design Review Zoning Ordinance, by which the City regulated construction to ensure consistency with the City's historic character.  *Virginia City*, ¶¶ 3, 9-10.  The ordinance regulated such matters as "setback distances, height, window size and placement, and general structure."  *Virginia City*, ¶ 9.  We affirmed the District Court's rejection of the homeowner's challenge to the

---

[1] The parties acknowledge that the City of Helena has self-governing powers, Mont. Const. art. XI, § 6; § 7-1-101, MCA, and neither side contests the applicability of these statutory provisions in this dispute.

9

requirements of the building permits and entry of summary judgment against the homeowner. *Virginia City*, ¶¶ 20, 23, 25. The City reasons that, if ordinances may be legitimately enacted to "regulate such things as 'window size and placement'. . . then the City of Helena can legitimately regulate the use of structures with wooden roofing materials through the very same municipal zoning authorities for the safety of life and property."

¶14 Svees correctly argue that our holding in *Virginia City* concerned the homeowner's failure to adhere to the terms of the building permits, not the propriety of the zoning ordinances. We explained that the parties had agreed that the permits controlled the issues before the Court, that "to the extent that any requirement in the permits and accompanying documents is at variance with the provisions of Ordinance 503 or other City ordinances, the provisions of the permits control," *Virginia City*, ¶ 17, and thus "Defendants' counterclaims and arguments relating to the validity and enforceability of the ordinances have no bearing on whether the City may enforce the terms of the permits." *Virginia City*, ¶ 37. Consequently, we did not address the validity of the subject ordinances in *Virginia City*. It is further notable that the actual building issues resolved in that case involved setback and structural requirements, which are zoning-related questions not at issue here. *Virginia City*, ¶¶ 18-24.

¶15 The Svees note that two attorney general opinions are consistent with the District Court's holding. In 40 Attorney General Opinion 76, the Attorney General concluded that the enactment of the state building code in 1969 effectively repealed § 7-33-4203,

MCA, which granted local governments the power to regulate the construction of combustible buildings, opining that "the authority to adopt rules for the construction of all buildings was vested in the state under [Montana law]. These provisions leave no room for a local government to prescribe rules dealing with building construction." 40 Op. Att'y Gen. at 3; *see also* Opinion No. 81, 37 Op. Att'y Gen. 2 (1977). The Legislature thereafter agreed, subsequently repealing § 7-33-4203, MCA. Sec. 156, Ch. 370, L. 1987.

¶16    Section 7-1-113(1), MCA, provides "[a] local government with self-government powers is prohibited the exercise of any power in any manner inconsistent with state law or administrative regulation in areas of law affirmatively subjected by law to state regulation or control." Section 11-41-2 of the Helena City Code expressly limits the materials that may be used in the construction or repair of a building. The Ordinance thus exceeds the zoning authority granted to municipalities by statute and trespasses into subject matter that had been made the exclusive domain of the Department of Labor and Industry by the Legislature. The District Court correctly granted summary judgment in favor of Svees.[2]

---

[2] We noted in *City of Missoula v. Armitage*, 2014 MT 274, ¶ 18, 376 Mont. 448, __ P.3d __, that § 7-1-113(2), MCA, provides that an "exercise of power is inconsistent with state law or regulation if it establishes standards or requirements which are lower or less stringent than those imposed by state law or regulation," and held that a city ordinance imposing a fine upon a DUI suspect for refusing a breath or blood test was not inconsistent under this provision because it simply provided an additional regulation and "pose[d] no conflict" to § 61-8-103, MCA. *Armitage*, ¶ 22. Here, a conflict is posed between the challenged ordinance, which we have determined to be a building regulation, and the state building code, and thus the ordinance is invalid because "[i]n areas affirmatively subjected to state regulation or control, local governments with self-government powers are expressly prohibited from exercising any power

¶17    *2. Did the District Court err by concluding the Svees were ineligible for an award of attorney fees under § 27-8-313, MCA?*

¶18    As a general rule, attorney fees are considered to be the burden of the respective litigants in a case.  Montana follows the "American Rule," which provides that, absent statutory or contractual authority, attorney fees will not be awarded to the prevailing party in a lawsuit.  *Western Tradition P'ship, Inc. v. Att'y Gen. of Mont.*, 2012 MT 271, ¶ 9, 367 Mont. 112, 291 P.3d 545.  We have recognized equitable exceptions to this rule, but construe them narrowly "lest they swallow the rule."  *Trustees of Ind. Univ. v. Buxbaum*, 2003 MT 97, ¶ 19, 315 Mont. 210, 69 P.3d 663; *Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, ¶ 23, 351 Mont. 464, 215 P.3d 649.  We have rejected the expansion of such equitable exceptions when the effect would "drive a stake into the heart of the American Rule."  *Jacobsen*, ¶ 22 (quoting *Mountain West Farm Bureau Mut. Ins. Co. v. Brewer*, 2003 MT 98, ¶ 40, 315 Mont. 231, 69 P.3d 652).

¶19    Svees moved for recovery of costs and attorney fees in the District Court on three bases: 1) The supplemental relief provision of the Uniform Declaratory Judgments Act (UDJA); 2) § 25-10-711(1), MCA (relating to recovery from a governmental entity when a suit or defense was frivolous or in bad faith); and 3) the *Foy* exception to the American Rule.  The District Court denied relief on all three grounds.  We conclude Svees are entitled to attorney fees under the UDJA, and address that single basis for relief.

---

that is inconsistent with state law or administrative regulation." *Armitage*, ¶ 18 (citing § 7-1-113(1), MCA).

¶20 As we explained in *United Nat'l Ins. Co. v. St. Paul Fire Marine Ins. Co.*, 2009 MT 269, ¶ 38, 352 Mont. 105, 214 P.3d 1260, the threshold question for an award of attorney fees is "whether the equities support an award." One of these equitable considerations is whether the parties are similarly situated. In *United Nat'l*, we reasoned that because the parties were similarly situated, the equities did not support an award of attorney fees. *United Nat'l*, ¶ 39. Similarly, in *Mungas v. Great Falls Clinic, LLP*, 2009 MT 426, ¶ 46, 354 Mont. 50, 221 P.3d 1230, we held the equities did not support an award of attorney fees where the subject action involved partnership agreements entered into by sophisticated and well-informed parties dealing with one another on equal footing. Likewise, in *Ahlgren*, ¶ 19 and *New Hope Lutheran Ministry v. Faith Lutheran Church of Great Falls, Inc.*, 2014 MT 69, ¶ 76, 374 Mont. 229, 328 P.3d 586, we denied attorney fees because the parties to the cases were situated in similar positions and on equal footing.

¶21    The case here is distinguishable from those noted above in that the parties here are clearly not similarly situated or on equal footing.  The Svees sought to accomplish a low-cost repair of their roof in response to a notice from their insurance company about cancellation of their coverage.  By so doing, they were named as defendants in both criminal and civil actions filed by the municipal government, in comparison to whom they had significantly less resources to litigate the alleged violation of the ordinance.  As such, the equitable threshold consideration is satisfied.

¶22    The next step is to apply the tangible parameters test articulated in *Buxbaum.* There, this Court recognized the propriety of an attorney fee award in declaratory judgment actions.  We held that district courts possess authority to award attorney fees under the supplemental relief provisions of the UDJA as "necessary or proper." *Buxbaum*, ¶ 46.  We stated that while supplemental relief provisions are typically provided in the context of an insurer/insured relationship, "we need not limit application" to that arrangement. *Buxbaum*, ¶ 42.  Noting that the "necessary or proper" language is nebulous, we adopted an analytical framework from the Ohio Court of Appeals to articulate tangible parameters for trial courts to use when analyzing this issue. *Buxbaum*, ¶ 43.  These parameters contemplated a situation in which the "necessary or proper" requirement would be satisfied. *Buxbaum*, ¶ 44.  We restated those tangible parameters in *Renville v. Farmers Ins. Exch.* as situations in which: 1) an insurance company possesses what the plaintiffs sought in the declaratory relief action; 2) it is necessary to seek a declaration showing the plaintiffs are entitled to the relief sought; and 3) the

14

declaratory relief sought was necessary in order to change the status quo. 2004 MT 366, ¶ 27, 324 Mont. 509, 105 P.3d 280.

¶23    The District Court concluded that Svees were not entitled to attorney fees, reasoning that:

> The first factor of the tangible parameters test does not apply here because there is no insurer or self-insurer involved. Further, a declaratory judgment action was the procedural course chosen by the Svees, who could have opted to litigate their position in the context of the suit filed by the City. A declaratory judgment action was not necessary to address the validity of the ordinance . . . . Svees' decision to litigate the validity of the ordinance through the UDJA does not entitle them to attorney fees per se. If such were the case, attorney fees should arguably be awarded in every declaratory judgment action challenging a government action.

¶24    Contrary to the District Court's reasoning, we stated in *Buxbaum*, as noted above, that we did not intend to define the exclusive circumstances that would justify an award, specifically, to only the insurance context. *Buxbaum*, ¶ 42. *Buxbaum* was limited in this regard, describing but one instance in which attorney fees are "necessary or proper" under the terms of the UDJA. The court's conclusion that the first prong of the tangible parameters could not be met because it was inapplicable was incorrect.

¶25    With respect to the second prong of the test, we conclude that a declaratory action was necessary. At the instance of notice from their insurer, Svees undertook a small project to replace damaged wooden shingles on their roof, and limited the scope of their repairs due to personal financial constraints. As a result, the Svees found themselves defending legal actions brought by the City, first a criminal action and then a six-count civil action, resulting in three years of litigation and the incurrence of substantial legal

15

fees by Svees. While the District Court reasoned that the Svees could have opted to litigate within the context of the legal action initiated by the City, it was both appropriate and necessary for the Svees to file a declaratory action to get to the root of the City's multiple claims—the validity of the ordinance itself, from which the City drew its authority. A declaratory action solely challenging the ordinance was the quickest and most direct path to resolution and relief, in light of the City's multiple enforcement actions.

¶26 The final prong of the test is satisfied when a declaratory judgment action is necessary to change the status quo. Here, the city initiated legal proceedings based upon the "status quo"—the enacted ordinance. In order to change the status quo, Svees initiated this action to challenge the validity of the ordinance. In *Martin v. SAIF Corp.*, 2007 MT 234, ¶ 27, 339 Mont. 167, 167 P.3d 916, we held that attorney fees in favor of SAIF were inappropriate because the declaratory action at issue failed to change the status quo with respect to SAIF. There, the Oregon Worker's Compensation Board (Board) had determined SAIF (a state-chartered worker's compensation insurance company) was entitled to a share of Martin's third-party tort action award as subrogation for benefits paid to Martin following an accident. *Martin*, ¶ 7. Because SAIF was already entitled to its portion of the tort settlement per the Board's decision, it was not necessary for SAIF to seek a declaration from the Montana court in order to change the status quo, and, thus, the third prong of the tangible parameters test was not met. *Martin*, ¶ 27. Unlike the situation in *Martin*, Svees did not initiate this action to enforce the status

16

quo, but rather sought to alter it. The third prong of the tangible parameters test is thus satisfied.

¶27 Because the equitable considerations merit an award of attorney fees and the Svees have satisfied the tangible parameters test, we conclude it was an abuse of discretion for the District Court to deny an award of attorney fees. While § 11-41-2 has been found invalid, the Svees have technically prevailed but are left only with a legally patched roof and significant legal bills. Accordingly, we reverse the District Court's decision to deny attorney fees and remand for proceedings to determine the appropriate amount of fees to be awarded.

¶28 *3. Did the District Court err when denying and dismissing the Svees's constitutional arguments?*

¶29 The Svees made several constitutional claims for relief within their motion for summary judgment, which the District Court dismissed. The District Court stated that it would be "inappropriate . . . to address or resolve any constitutional challenges" because the order granting summary judgment in favor of the Svees effectively "resolve[d] the case in the Svees' favor on non-constitutional grounds."

¶30 Svees cross-appeal the denial and dismissal of those claims, but acknowledge in their briefing that, if the District Court's order is affirmed, then it is unnecessary for this Court to address their constitutional claims. This Court has repeatedly recognized that courts should avoid constitutional issues whenever possible. *Merlin Myers Revocable Trust v. Yellowstone Cnty.*, 2002 MT 201, ¶ 24, 311 Mont. 194, 53 P.3d 1268. Accordingly, the District Court's dismissal of these claims is likewise affirmed.

17

¶31    Affirmed in part, reversed and remanded in part.


/S/ JIM RICE

We concur:

/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA


Justice Beth Baker, concurring in part and dissenting in part.

¶32    I concur with the Court's disposition of Issues One and Three, but dissent from its decision to award attorney's fees. Applying the deferential standard of review accorded the trial court in such matters, and consistent with settled precedent under § 27-8-313, MCA, I would conclude that the District Court's denial of fees was not an abuse of its discretion.

¶33    Before the District Court, the Svees sought fees on three grounds: first, that the City's action was frivolous or brought in bad faith, justifying a fee award under § 25-10-711(1)(b), MCA; second, that they were entitled to fees under the equitable exception to the American Rule established in *Foy v. Anderson*, 176 Mont. 507, 580 P.2d 114 (1978); and third, that fees are "necessary or proper" as supplemental relief under § 27-8-313, MCA. The District Court analyzed and denied relief on all three grounds. The Svees appeal only the court's third ruling. They do not challenge the court's determination that the City acted in good faith in its attempt to enforce the ordinance, nor do they take issue

18

with the court's conclusion that the Svees were not "forced to hire an attorney to defend an action that is frivolous or utterly without merit," as required by *Foy*. *DeVoe v. City of Missoula*, 2012 MT 72, ¶ 25, 364 Mont. 375, 274 P.3d 752.

¶34 In denying relief under § 27-8-313, MCA, the District Court noted that the case began as an enforcement action by the City and that the validity of the ordinance could have been challenged and resolved in that enforcement action. Thus, the Svees were not compelled "to litigate the validity of the ordinance through the UDJA" and their decision to do so "does not entitle them to attorney fees per se." The District Court reasoned that "[i]t is axiomatic that the City has an obligation to enforce its ordinances and in this instance it was seeking to do just that." The court observed that the City had made efforts to "secure an expeditious district court resolution of the matter" and that the issue was "resolved short of trial by briefs and a single oral argument."

¶35 Our precedent is clear that "equitable considerations" are a "threshold determination" in a claim that fees are "necessary or proper" in a declaratory judgment action. *W. Tradition P'ship*, ¶ 12. We identified in *Buxbaum* additional "tangible parameters" for a court to consider once that threshold standard is met. *Buxbaum*, ¶ 43. Although the Court points out that the award of fees is not limited to the insurance context (Opinion, ¶ 24), that is only the first component of the tangible parameters consideration. *Renville*, ¶ 27. The Court's analysis falls short in attempting to satisfy the other two factors—whether a declaratory judgment action was necessary to establish the plaintiffs' entitlement to relief and whether declaratory relief was necessary in order to

19

change the status quo. *Renville*, ¶ 27. The District Court addressed these points directly, observing that the pursuit of a declaratory judgment was not "necessary" in order for the Svees to obtain relief, because the question was placed at issue by the City's enforcement action. The District Court's decision is faithful to the tangible parameters analysis articulated in *Buxbaum*: fees are "necessary or proper" only "when no other alternative was available" for a plaintiff to obtain relief except to seek a declaratory judgment. *Buxbaum*, ¶ 44 (quoting *McConnell v. Hunt Sports Ent.*, 725 N.E.2d 1193, 1225 (Ohio Ct. App. 1999)). In *Buxbaum*, we quoted the Ohio court's examples of why declaratory relief was "necessary" in those cases to obtain relief or change the status quo: "without a declaration, the insureds in *Brandenburg* would not have coverage under their insurance policy and the plaintiffs in *Culberson* would have a cloud on their title." *Buxbaum*, ¶ 44 (quoting *McConnell*, 725 N.E.2d at 1225). Here, in contrast, without the Svees' counter-petition for declaratory judgment, the City's complaint still would have been litigated, the ordinance still would have been found invalid, and the Svees still would have a "legally patched roof" and presumably "significant legal bills" Opinion, ¶ 27. Although the counter-petition may have served to focus the litigation, a plaintiff's "tactical" decision to seek a declaratory judgment, even though it "may have proved resourceful," does not "equal necessary or proper as contemplated by the statute." *Buxbaum*, ¶ 45 (quoting *McConnell*, 725 N.E.2d at 1225).

¶36 As we noted just last year, "only once have we upheld an award of attorney's fees in a declaratory relief action under § 27-8-313, MCA." *Horace Mann Ins. Co. v. Hanke*,

20

2013 MT 320, ¶ 35, 372 Mont. 350, 312 P.3d 429.  That single occasion occurred in *Renville*, which we described in *Hanke* as an "outlier" with "extreme circumstances." *Hanke*, ¶¶ 36, 38.  The District Court found no such extreme situation here, distinguishing another district court decision where fees were awarded against a county under "egregious circumstances."  The Court does not find clear error in the District Court's specific findings that this case does not involve the "burdensome procedural history involved in *Renville*" or that the City's "simply disjointed case management decisions" did not amount to lack of good faith.  Though it bemoans the fact that "three years of litigation" were consumed in getting the case resolved, the record shows that less than a year and a half transpired from the date the City's complaint was filed to the date of the District Court's summary judgment order.  The District Court determined that this case involved a good faith legal dispute over the validity of a municipal ordinance, noting that, like a state statute, it is "presumed valid unless a court determines otherwise."

¶37   We criticized the District Court in *Martin* for "focus[ing] on the fact that SAIF ultimately prevailed in the litigation rather than thoroughly articulating why an award of attorney fees to SAIF would be 'necessary and proper.'"  *Martin*, ¶ 25 (quoting *Renville*, ¶ 27.  The Court's decision today suffers the same flaw.  Its analysis is insufficient to support a conclusion that the District Court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason when it ruled that it was not "necessary" for the Svees to seek a declaratory judgment in order to obtain relief from the City's enforcement of its ordinance.  As the District Court rightly observed, if fees were

21

awarded here, "attorney fees should arguably be awarded in every declaratory judgment action challenging a government enactment." The court recognized that a private citizen opposing the government's good faith attempt to enforce its regulations most likely will incur expense and delay. The court was within its discretion to determine that this case did not present the rare exception that justified a fee award. *See also Wagner v. Woodward*, 2012 MT 19, ¶ 31, 363 Mont. 403, 270 P.3d 21.

¶38 The decision to award fees in this case eviscerates the requirement that a declaratory judgment action be "necessary" in order for a party to obtain relief. Further, it disregards § 25-10-711(1)(b), MCA, which we have acknowledged is a statutory "guidepost" to award fees against a governmental entity based on considerations of bad faith or frivolous litigation. *W. Tradition P'ship*, ¶ 18. More, the Court appears to create an equitable exception to the American Rule broader than that recognized under *Foy*, which reserves an award of fees for "rare instances and only when a party has been forced to defend against a wholly frivolous or malicious action." *Boehm v. Cokedale, LLC*, 2011 MT 224, ¶ 27, 362 Mont. 65, 261 P.3d 994 (citing *Estate of Pruyn v. Axmen Propane, Inc.*, 2009 MT 448, ¶ 72, 354 Mont. 208, 223 P.3d 845). Today's decision appears to require only that, in the reviewing court's view, the equities of the case support awarding fees to a citizen who incurs "significant legal bills" in a successful challenge to a governmental regulation. Opinion, ¶ 27. This conclusion not only departs from our established course in restricting the scope of exceptions to the American Rule,

but charts a new path for obtaining fees against a governmental entity seeking to enforce its regulations.

¶39    I would affirm entirely the District Court's judgment.


/S/ BETH BAKER