DA 11-0333

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 241

JAY RATLIFF,

      Plaintiff and Appellee,

  v.

DEAN PEARSON, GARY PEARSON,

      Defendants,

  and

DALE SCHWANKE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Teton, Cause No. DV 10-024
Honorable E. Wayne Phillips, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Norman L. Newhall, Linnell, Newhall, Martin & Schulke, P.C., Great Falls, Montana

      For Appellee:

          J. Devlan Geddes, Goetz, Gallik & Baldwin, P.C., Bozeman, Montana

Submitted on Briefs:  August 3, 2011
Decided:  September 28, 2011

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Appellant Dale Schwanke (Schwanke) appeals from an order of the Ninth Judicial District Court, Teton County, in which the District Court denied his motion for substitution of a district judge.  We reverse.

¶2     We review the following issue on appeal:

¶3     *Whether the District Court wrongly denied Schwanke's motion for substitution of a district judge.*

## FACTUAL AND PROCEDURAL HISTORY

¶4     Dean and Gary Pearson (Pearsons) entered an alleged contract with Jay Ratliff (Ratliff) for the sale of Pearsons' property (Property) to Ratliff.  The parties failed to complete the sale.  Ratliff filed an action against Pearsons in which he seeks specific performance of the alleged contract.  Ratliff also seeks damages, in the alternative, from Pearsons for breach of contract and breach of the covenant of good faith and fair dealing.

¶5     Pearsons timely filed a motion to substitute District Court Judge Laurie McKinnon. Judge David Cybulski assumed jurisdiction.  Ratliff timely filed a motion to substitute Judge Cybulski.  Judge David Rice assumed jurisdiction.  Judge Rice recused himself effective November 30, 2010.  Judge E. Wayne Phillips, the current District Court Judge in this matter, assumed jurisdiction.

¶6     Judge Phillips granted Ratliff's pending motion for leave to file an amended complaint on February 11, 2011.  The amended complaint added several causes of action against Pearsons and it also added Schwanke as a defendant.  Schwanke had served in some

capacity as counsel for Pearsons in the failed transaction that underlies Ratliff's complaint. The amended complaint alleges four new causes of action against Schwanke and Pearsons: actual fraud, constructive fraud, negligent misrepresentation, and punitive damages.

¶7 The complaint sets forth factual allegations that describe Schwanke's allegedly tortious conduct. Ratliff alleges that Schwanke made tortious misrepresentations of fact on his own, and on behalf of Pearsons. Ratliff contends that Schwanke and Pearsons told him to take over farming the wheat crop on the Property before the sale closed thereby inducing him to improve the Property. Ratliff alleges that Schwanke continued to affirm the validity of the contract for the sale of the Property until several days before the scheduled closing date. Ratliff claims that Schwanke finally told him just days before the scheduled closing that Pearsons had entered into a contract to sell the Property to a third-party for $300,000 more than Ratliff had agreed to pay.

¶8 Ratliff served Schwanke with the amended complaint on March 19, 2011. Schwanke filed a motion to substitute Judge Phillips on March 21, 2011. The District Court denied the motion on March 23, 2011. The court deemed Schwanke's motion untimely pursuant to § 3-1-804(9), MCA, which provides that "no party who is joined . . . has any right of substitution after the time has run as to the original parties." The original parties acknowledged summons on June 18, 2010. Schwanke Appeals.

STANDARD OF REVIEW

3

¶9     This Court reviews for correctness a district court's ruling on a motion to substitute a district court judge. *Patrick v. State*, 2011 MT 169, ¶ 12, 361 Mont. 204, 257 P.3d 365.

## DISCUSSION

¶10    *Whether the District Court wrongly denied Schwanke's motion for substitution of a district judge.*

¶11    Schwanke argues first that § 3-1-804(1)(a), MCA, provides a right to substitute the district court judge upon the addition of a new party to the action. He further alleges that § 3-1-804(8), MCA, allows substitution upon the recusal of a presiding judge. Schwanke suggests that both statutes apply here.

¶12    Ratliff counters that § 3-1-804(1)(a), MCA, permits adverse parties to substitute the district court judge only once within 30 days of being served. Ratliff argues that Schwanke and Pearsons do not constitute adverse parties. Ratliff further contends that even if the Court deemed Schwanke an adverse party, that Schwanke's motion remains untimely under § 3-1-804(1)(a), MCA. Schwanke filed his motion to substitute more than 30 days after Judge Phillips assumed jurisdiction on January 10, 2011.

¶13    The District Court did not discuss whether Schwanke and Pearsons constituted adverse parties under § 3-1-804(1), MCA. The court instead deemed Schwanke's motion to substitute untimely under § 3-1-804(9), MCA. Section 3-1-804(9), MCA, provides that no joined party retains the right of substitution after the time for substitution has run on the original parties. Schwanke contends that he qualifies as a third-party defendant who possesses an independent right of substitution, rather than simply a subsequently joined

4

party. Schwanke argues that he has 30 days from the time of service to move to substitute the judge as a new party to the action. Section 3-1-804(1)(a), MCA.

*Adversity*.

¶14     Section 3-1-804, MCA, sets forth Montana's rules regarding substitution of district court judges. The legislature amended § 3-1-804, MCA, in 2009. The amendments renumbered and reworded the relevant provisions. The amendments do not change substantively the relevant provisions. Section 3-1-804, MCA (2009); § 3-1-804, MCA (2007). Each adverse party in a civil action possesses a statutory right to one judicial substitution in district court. Section 3-1-804(1), MCA; *Patrick*, ¶ 15.

¶15     Section 3-1-804(9), MCA, generally bars a subsequently joined party, however, from filing a motion to substitute once the original party's time for substitution has expired. *Eisenhart v. Puffer*, 2008 MT 58, ¶ 14, 341 Mont. 508, 178 P.3d 139; *Mattson v. Mont. Power Co.*, 2002 MT 113, ¶¶ 13-15, 309 Mont. 506, 48 P.3d 34. The Court in *Mattson* determined that third-party defendants have 30 days from the service of summons to substitute a district court judge. *Mattson*, ¶¶ 13-15. A subsequently joined party's right to substitute expires 30 days after the original parties have been served. *Id.*

¶16     The Court recognized that responsible judicial administration requires limits on the rights of subsequently joined parties to substitute a district court judge. *Id.* at ¶ 21. Subsequently joined parties often appear at late stages in a proceeding after the presiding judge may have issued substantive rulings. To allow a right of substitution to subsequently joined parties as a matter of course could "precipitate delay, cause duplication of effort, and

5

waste time and expense." *Id.* at ¶ 23. The Court further recognized that extending the disqualification process would provide few tangible benefits as a subsequently joined party often shares "a commonality of interest with at least one of the original parties." *Id.*

¶17 The Court distinguished the status of the subsequently joined defendant from the third-party defendant who often enters the litigation "in a position adverse to all of the other parties involved." *Id.* at ¶ 24. This adversity of interest revives the subsequently joined party's right of substitution. *Id.* The Court in *Eisenhart* followed the logic of *Mattson* in holding that a subsequently joined party retains the right to substitute the district court judge only if the subsequently joined party demonstrates adversity with its co-party to the action. *Eisenhart*, ¶ 14.

¶18 Schwanke contends that the Court should analyze his motion to substitute pursuant to *Mattson* and *Eisenhart* as one filed by a third-party defendant as opposed to a subsequently joined defendant. We need not resolve the dispute over Schwanke's status. Whether Schwanke constitutes a third-party defendant or a subsequently joined defendant proves irrelevant if Schwanke demonstrates that adversity exists between Pearsons and him. *Eisenhart*, ¶ 14 (citing *Goldman Sachs Group, Inc. v. Mont. Second Judicial Dist. Ct.*, 2002 MT 83, ¶ 17, 309 Mont. 289, 46 P.3d 606).

¶19 We first must determine, therefore, whether Schwanke and Pearsons qualify as adverse parties. This Court discussed the meaning of "adverse parties" under § 3-1-804(1), MCA, in *Goldman Sachs*. The plaintiffs served the original defendant, PPL Montana (PPLM), with the initial complaint on September 4, 2001. The plaintiffs added Goldman

6

Sachs by an amended complaint through the fictitious name statute on September 14, 2001. *Goldman Sachs*, ¶ 2. PPLM moved to substitute the district court judge on September 21, 2001. *Id.* at ¶ 3. Goldman Sachs acknowledged service of the amended complaint on November 16, 2001, and moved to substitute on November 23, 2001. *Id.* The plaintiffs opposed Goldman Sachs' motion.

¶20 The district court determined that Goldman Sachs had failed to demonstrate that hostility existed between them and PPLM. As a result, the court denied Goldman Sachs' motion to substitute. *Id.* at ¶ 4. The district court also deemed Goldman Sachs' motion untimely as more than 30 days had passed from the date of service of the original complaint to PPLM on September 4, 2001, and the filing of Goldman Sachs' motion to substitute on November 23, 2001. *Id.* at ¶ 5.

¶21 Goldman Sachs argued on appeal that its adversity to the plaintiffs met the "adverse party" requirement to trigger a right of substitution under § 3-1-804(1), MCA. *Id.* at ¶ 10. Goldman Sachs maintained that the statute did not require it to establish adversity to other defendants in order to possess a right to substitute a district judge as a subsequently joined party. This Court affirmed the district court's decision, but on different grounds.

¶22 Section 3-1-804(1), MCA, entitles each party to one substitution of a district judge within 30 calendar days after the summons has been served "or an adverse party has appeared." The statute requires the subsequently joined party to establish that *adversity*, rather than hostility, existed between it and other defendants in order to exercise an independent right to substitute. *Id.* at ¶¶ 14-17. The Court relied on the allegations set forth

7

in the complaint in order to determine whether adversity existed among the defendants. *Id.* at ¶¶ 17-18.

¶23     The amended complaint made no unique allegations against Goldman Sachs. The complaint simply alleged that all defendants had participated in an effort to transfer corporate assets without shareholder approval. The complaint "lump[ed] all [d]efendants together for purposes of culpability." *Id.* at ¶ 18. The amended complaint failed to demonstrate adversity between the originally named defendant, PPLM, and the subsequently named defendant, Goldman Sachs. *Id.* The Court further noted that PPLM and Goldman Sachs had engaged in coordinated efforts in defending the claims against them. Goldman Sachs lacked a statutory right to substitute the district court judge under these circumstances where a non-adverse co-defendant, PPLM, already had exercised that right under § 3-1-804(1), MCA. *Id.* at ¶ 20.

¶24     The Court in *Eisenhart* likewise considered whether adversity existed between the original defendants and a defendant subsequently joined to the action pursuant to a show cause order. Eisenhart had sought to enforce a judgment against the defendants and their surety, Fidelity and Deposit Company of Maryland (F&D). *Eisenhart,* ¶ 9. The statute at issue made no distinction between the defendants and F&D regarding liability for Eisenhart's claim. *Id.* at ¶ 17. The statute allowed Eisenhart to recover either from defendants, or from their surety. *Id.* The defendants' counsel appeared in the action on behalf of F&D and filed the motion to substitute on behalf of F&D. No adversity existed between the original defendants and the subsequently joined F&D. *Id.*

8

¶25　We look to Ratliff's amended complaint to determine whether adversity exists between Pearsons and Schwanke. *Goldman Sachs*, ¶ 17. Ratliff filed the original complaint against Pearsons on May 3, 2010, in which he alleges that Pearsons breached a contract for the sale of land. Count one seeks specific performance of the alleged contract. Count two seeks damages for breach of contract. Count three alleges that Pearsons breached the implied covenant of good faith and fair dealing.

¶26　Ratliff filed his first amended complaint on February 14, 2011. The amended complaint re-alleges the first three counts against Pearsons. The amended complaint adds a fourth count solely against Pearsons. This fourth count alleges that Pearsons induced Ratliff to make improvements on the Property by promising to sell the Property to Ratliff. Count five alleges fraud against Pearsons and Schwanke. Ratliff alleges that both Pearsons and Schwanke made false representations about Pearsons' intention to sell the Property to Ratliff. Count six alleges constructive fraud. Ratliff alleges that Pearsons and Schwanke owed separate duties to Ratliff that both defendants breached. Count seven alleges negligent misrepresentation against both defendants and count eight alleges punitive damages against both defendants.

¶27　Ratliff contends that Schwanke's and Pearsons' interests align completely. Ratliff points to the fact that Schwanke served as Pearsons' counsel in the underlying transaction. The amended complaint names Schwanke and Pearsons collectively for fraud, constructive fraud, and negligent misrepresentation. Ratliff also argues that Schwanke and Pearsons both

9

made false representations on the same subject matter—the Pearsons' intention to sell the Property.

¶28 The parties in both *Eisenhart* and *Goldman Sachs* failed to show that any unique claims existed among the original defendants and the subsequently joined defendant. The plaintiffs in *Eisenhart* could have collected damages from either defendant based on the same factual allegations. *Eisenhart*, ¶ 17. The complaint in *Goldman Sachs* combined all defendants for purposes of establishing culpability. *Goldman Sachs*, ¶ 18. The same counsel represented all the defendants in *Eisenhart*. *Eisenhart*, ¶ 9. The defendants in *Goldman Sachs* likewise had engaged in a coordinated defense against the claims. *Goldman Sachs*, ¶ 20.

¶29 Ratliff's amended complaint alleges that Schwanke made tortious misrepresentations to Ratliff on his own, and on behalf of Pearsons. Ratliff alleges that Dean Pearson told him that he could treat the Property as his own before the closing. Ratliff alleges that Schwanke told him to take over farming the property pending the closing. Ratliff further alleges that Schwanke affirmed the validity of the contract when he contacted Ratliff to ask him how he wanted the property titled. Ratliff contends that Schwanke's material misrepresentations of fact induced Ratliff to spend time and money improving the Property. The complaint alleges that Schwanke knowingly made these false statements to Ratliff on Pearsons' behalf.

¶30 The differing factual allegations against the parties will establish whether the parties individually, or collectively, committed fraud, constructive fraud, or negligent misrepresentation. Pearsons could contest the validity of the representations allegedly made

10

to Ratliff by Schwanke on Pearsons' behalf. It further appears on the face of the complaint as though Schwanke and Pearsons have reasons to dispute factual statements that either party allegedly made to the other. Schwanke may be able to establish that he, like Ratliff, genuinely believed that Pearsons intended to sell the property to Ratliff. Moreover, any duties that Pearsons may owe to Ratliff likely differ from any duties that Schwanke may owe to Ratliff. The amended complaint acknowledges that Pearsons and Schwanke owe different duties to Ratliff.

¶31 Unlike in *Eisenhart,* the parties have retained separate counsel and appear to have available separate defense strategies. Pearsons may assert a separate malpractice claim against Schwanke. Schwanke may claim that he acted on misinformation provided by Pearsons. The defendants' interests do not necessarily align. Schwanke and Pearsons qualify as adverse parties under these circumstances. *Goldman Sachs,* ¶¶ 17-18; *Eisenhart,* ¶ 14.


*Timeliness*.

¶32 Schwanke next must demonstrate that he filed a timely motion to substitute. Section 3-1-804(1), MCA; *Eisenhart,* ¶ 18; *Goldman Sachs,* ¶ 20. Section 3-1-804(1)(a), MCA, affords Schwanke, as an adverse party, 30 calendar days after service to move for substitution of a judge. Ratliff served Schwanke with the amended complaint on March 19, 2011. Schwanke timely filed his motion of substitution on March 21, 2011.

¶33 We reverse and remand to the District Court to allow for substitution of judge.

/S/ BRIAN MORRIS


We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ JAMES C. NELSON